# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 101

### OCTOBER TERM, A.D. 2019

October 8, 2019

KIRK ERWIN STEFFEY,

Appellant
(Defendant),

v.

S-19-0012

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*

Office of the Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ,** Justice.

[¶1]    Kirk Erwin Steffey pled no contest to driving under the influence of alcohol to a degree which rendered him incapable of safely driving. *See* Wyo. Stat. Ann. § 31-5-233(b)(iii)(A) (LexisNexis 2017). Prior to sentencing, he twice moved to withdraw his plea. The district court denied both motions and sentenced Mr. Steffey to 4-7 years in prison. Mr. Steffey claims his plea was not knowing or voluntary and the district court abused its discretion in denying his motions to withdraw his plea. We agree and reverse.

## ISSUES

[¶2]    The issues on appeal are:

  1.    Was Mr. Steffey's no contest plea knowing and voluntary?

  2.    Did the district court abuse its discretion in denying Mr. Steffey's motions to withdraw his no contest plea?

## FACTS

### *The Offense Conduct*

[¶3]    Around 10:30 a.m. on March 23, 2017, Mr. Steffey ran a red light and collided with two pickup trucks. He did not stop after the accident. Shortly thereafter, Deputy Morrell with the Rock Springs Police Department located Mr. Steffey's vehicle as it was pulling into a residential driveway. Mr. Steffey exited his vehicle and began to approach the residence. Deputy Morrell stopped him and placed him in the back of his patrol car. Mr. Steffey told Deputy Morrell he had consumed a few beers approximately 45 minutes earlier. Officer Miles arrived on the scene and talked with Mr. Steffey. Officer Miles smelled alcohol on Mr. Steffey's breath and noticed Mr. Steffey's eyes were red, watery, and bloodshot.

[¶4]    The officers transported Mr. Steffey to the Sweetwater County Detention Center where Officer Miles performed the horizontal gaze nystagmus test on Mr. Steffey. The results indicated Mr. Steffey was under the influence of alcohol.[1] Officer Miles did not

---

[1] The horizontal gaze nystagmus test is a standard field sobriety test which assesses the ability of an individual's eyes to track an object. *Vogt v. State, ex rel., Dep't of Transp.*, 2013 WY 123, ¶ 6 n.5, 310 P.3d 899, 903 n.5 (Wyo. 2013). The officer holds an object such as a penlight approximately a foot in front of the individual's face and moves it slowly from side to side while instructing the individual to follow the object with his eyes only (i.e., while not moving his head). *Id.* If the eyes jerk or bounce (referred to as nystagmus) rather than follow the object smoothly, the individual may be under the influence of alcohol or drugs. *Id.*

conduct any other field sobriety tests because Mr. Steffey said he was physically incapable of performing them due to a recent knee surgery. Mr. Steffey consented to a breathalyzer test, which revealed a blood alcohol content (BAC) of 0.137%. The officers administering the test, however, failed to observe Mr. Steffey the requisite 15 minutes prior to administering the test.

[¶5] Mr. Steffey told the officers he was traveling to Walmart to purchase groceries. He claimed to have not seen the red light because he was using Google Maps on his cell phone and not paying attention. He left the scene because he did not have a valid driver's license and did not want to go to jail.

### The Amended Charge and Mr. Steffey's No Contest Plea

[¶6] The State charged Mr. Steffey with driving or having physical control of a vehicle with a BAC of 0.08% or more (his fourth offense in ten years), a felony, in violation of § 31-5-233(b)(i) and (e), as well as several misdemeanors.[2] Mr. Steffey pled not guilty, and the trial court scheduled a pretrial conference and trial. On July 21, 2017, Mr. Steffey moved for a continuance of the July 25, 2017, pretrial conference and the August 14, 2017, trial claiming, *inter alia*, he needed additional time "to follow up on some of the discovery obtained by defense subpoenas, specifically to analyze the maintenance records of the breathalyzer at the Sweetwater County Detention Center." The court rescheduled the pretrial conference to August 10, 2017, but it did not continue the trial.

[¶7] Sometime prior to August 10, 2017, the State learned it could no longer rely on Mr. Steffey's breathalyzer test results because the officers administering the test failed to observe him for the requisite 15 minutes prior to administering it. As a result, on August 10, 2017, the State moved to amend the charge from driving while under the influence of alcohol based on a BAC of .08% or more (§ 31-5-233(b)(i) and (e)) to driving while under the influence of alcohol to a degree which rendered him incapable of safely driving (§ 31-5-233(b)(iii)(A)).[3] The district court granted the motion and the State filed an amended

---

The test in this case revealed a lack of smooth pursuit (meaning Mr. Steffey's eyes jerked or bounced while following the object), distinct and sustained nystagmus at maximum deviation (meaning Mr. Steffey's eyes began jerking within four seconds while looking all the way to the side), and the onset of nystagmus prior to his eyes reaching 45 degrees. *See* Marcelline Burns, Ph.D., *The Robustness of the Horizontal Gaze Nystagmus Test*, The National Highway Traffic Safety Administration, September 2007, at 2.

[2] The misdemeanors included driving without an ignition interlock device (Wyo. Stat. Ann. § 31-7-404(a) (LexisNexis 2017)); driving with a cancelled, suspended, or revoked driver's license, subsequent offense (Wyo. Stat. Ann. § 31-7-134(c) (LexisNexis 2017)); failure to stop for an accident involving damage to a vehicle or property (Wyo. Stat. Ann. §§ 31-5-1102 and 31-5-1103 (LexisNexis 2017)) (two counts); and failure to stop at a red light (Wyo. Stat. Ann. § 31-5-403(a)(iii)(A) (LexisNexis 2017)).

[3] The State contends it was aware of the faulty breathalyzer test by March 29, 2017, the date Mr. Steffey's bond was reduced. It does not explain, however, why it took until August 10, 2017, to amend the charge.

2

information, all on August 10, 2017. That same day, the court held the pretrial conference, which turned into a change of plea hearing. Pursuant to a plea agreement, which was never reduced to writing, Mr. Steffey pled no contest to the amended charge and to two misdemeanors. In exchange for his plea, the State dismissed the remaining misdemeanor counts and agreed to recommend a sentence of no more than 4-7 years in prison and to allow Mr. Steffey to argue for a sentence of probation.

### *Mr. Steffey's First Motion to Withdraw His Plea*

[¶8]   On November 30, 2017, Mr. Steffey moved to withdraw his plea under Rule 32 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.), arguing his plea was not knowing or voluntary.[4] He asserted his innocence and claimed to have "been rushed through the criminal justice system" and "not [to have] had the opportunity to review the entire discovery in [his] case." He also alleged his counsel learned about the faulty breathalyzer test the day before the pretrial conference. Rather than discuss it with him first, however, counsel approached the prosecutor, seeking a better deal.[5] The prosecutor refused the request, instead amending the charge. Mr. Steffey argued counsel should not have talked with the prosecutor about the faulty test without first informing him, and had counsel not talked with the prosecutor, he would have filed a motion to suppress and would have proceeded to trial. He further claimed he learned of the faulty breathalyzer test and the amended charge less than 15 minutes prior to the change of plea hearing, which was insufficient time for him to understand the amended charge.

[¶9]   After holding a hearing, the district court denied the motion to withdraw the plea. Because Mr. Steffey had not alleged the plea colloquy was inadequate under W.R.Cr.P. 11, the court analyzed whether Mr. Steffey had established a "fair and just reason" to withdraw his plea under W.R.Cr.P. 32(d), using the factors we outlined in *Frame v. State*, 2001 WY 72, ¶ 7, 29 P.3d 86, 89 (Wyo. 2001). The district court concluded four of the factors weighed in favor of Mr. Steffey being allowed to withdraw his plea—withdrawal of the plea would not prejudice the State, Mr. Steffey did not delay in seeking to withdraw his plea, withdrawal of the plea would not substantially inconvenience the court, and withdrawal would not waste judicial resources. The other three factors, however, weighed against withdrawal—Mr. Steffey's plea was knowing and voluntary, it was made with the close assistance of counsel, and Mr. Steffey had made only a bare assertion of innocence.

---

[4] This motion to withdraw, as well as his second motion to withdraw, focused solely on his plea to driving while under the influence of alcohol. His arguments on appeal are similarly focused. As a result, we too will focus our analysis on his driving under the influence plea, but we recognize our reversal also affects his pleas to the misdemeanor counts.

[5] There is some indication in the record that a plea deal existed as early as July 21, 2017. However, there is nothing in the record addressing the terms of any earlier plea deal or any discussions counsel had with Mr. Steffey concerning an earlier deal.

[¶10]  With regard to the potential suppression issue concerning the faulty administration of the breathalyzer test, the court concluded that while Mr. Steffey suggested counsel should not have discussed the issue with the prosecutor, he had failed to show how that discussion affected his plea or how it would have benefitted him at trial, as the State had already anticipated amending the charge and the faulty test could not have been used as a defense to the amended charge.  It also found Mr. Steffey had not raised the issue during the change of plea hearing even though he was aware of it prior to the hearing.  The court decided Mr. Steffey's motion to withdraw "'reflected no more than a desire to pursue a last, desperate defense tactic that would have had nothing to do with guilt or innocence.' [*United States v.*] *Graf*, 827 F.3d [581,] 584 [(7th Cir. 2016)]."

### *Mr. Steffey's Second Motion to Withdraw His Plea*

[¶11]  On January 16, 2018, Mr. Steffey, now represented by newly retained counsel, filed a second motion to withdraw his no contest plea.  This time, he claimed his plea was not knowing and voluntary because his prior counsel had not advised him of the consequences of his plea and had told him he would receive probation.  He also stated he had yet to receive or review the discovery in his case.

[¶12]  At the hearing on the motion, Mr. Steffey expounded on his claims.  He explained he arrived for the pretrial conference approximately 15 minutes early.  He had not intended on changing his plea.  After going through security at the courthouse, defense counsel ushered him into a conference room and informed him of the faulty breathalyzer test, the amended charge, and the proposed plea agreement.  With respect to the plea agreement, counsel told him the State could not seek an imprisonment term beyond 4-6 years,[6] but the ultimate sentence was left to the court's discretion.  However, counsel also told him he was "almost certain" he would receive probation because he had a job, and it had been five years since his last drunk driving conviction.  Mr. Steffey claimed his entire discussion with counsel lasted 5-10 minutes.  He testified this was insufficient time for him to understand the amended charge and plea agreement prior to having to enter his plea.

[¶13]  Mr. Steffey also complained he only spoke with his prior counsel four times before entering his plea, and he felt counsel did not have enough time for him.  He again criticized his prior counsel for speaking with the prosecutor about the faulty breathalyzer test without first discussing it with him.  Had counsel informed him first, he claimed he would have proceeded to trial and relied on the faulty test as a defense.  Mr. Steffey's testimony went uncontradicted because the State failed to call his prior counsel as a witness or otherwise rebut his testimony.

[¶14]  The district court denied the second motion to withdraw.  It determined the same four *Frame* factors favored allowing Mr. Steffey to withdraw his plea, but the same three

---

[6] The plea agreement actually required the State to recommend no more than 4-7 years in prison.

factors continued to weigh against allowing him to withdraw. As for his failure to receive discovery, the court decided Mr. Steffey had failed to explain what discovery he had not received (other than the discovery related to the suppression issue, which it had previously addressed) or how it would have made a difference had he known about it prior to entering his plea.

[¶15] With respect to Mr. Steffey's claim that counsel spent insufficient time with him prior to his plea and misled him to believe he would receive probation, the court concluded such conduct did not rise to the level of ineffective assistance of counsel. It also found the claims to be belied by the record. During the change of plea hearing, Mr. Steffey stated he was satisfied with counsel. He also stated he understood the maximum sentence was seven years, that the sentence was within the sole discretion of the court, and he would not be permitted to withdraw his plea if the sentence was more severe than he expected. Moreover, Mr. Steffey's testimony revealed only that counsel "predicted probation," not that he "promise[d] a particular outcome." In the end, the judge classified Mr. Steffey's request to withdraw his plea as a mere change of mind, which "does not constitute a fair and just reason to withdraw his plea. *Winsted* [*v. State*, 2010 WY 139,] ¶ 16, 241 P.3d [497,] 501 [(Wyo. 2010)]."

[¶16] On July 25, 2018, the district court sentenced Mr. Steffey to 4-7 years imprisonment.

## STANDARD OF REVIEW

[¶17] Mr. Steffey claims his no contest plea was neither knowing nor voluntary. We review this claim *de novo*. *Maes v. State*, 2005 WY 70, ¶ 9, 114 P.3d 708, 710 (Wyo. 2005). He also faults the district court for not allowing him to withdraw his plea. We review the denial of a motion to withdraw a plea for an abuse of discretion. *See Berger v. State*, 2017 WY 90, ¶ 7, 399 P.3d 621, 623 (Wyo. 2017).

[¶18] "A court abuses its discretion only when it could not reasonably decide as it did." *Id.* (citing *Venard v. Jackson Hole Paragliding, LLC*, 2013 WY 8, ¶ 6, 292 P.3d 165, 168 (Wyo. 2013)); *see also, Chapman v. State*, 2013 WY 57, ¶ 52, 300 P.3d 864, 874 (Wyo. 2013) (under the abuse of discretion standard, we decide "whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious" (quotations omitted)). "An abuse of discretion can [also] exist if the wrong law has been applied, the correct law has been applied but incorrectly interpreted, or if the correct law has been improperly applied." *Grove v. Pfister*, 2005 WY 51, ¶ 6, 110 P.3d 275, 278 (Wyo. 2005); s*ee also, Finley Res., Inc. v. EP Energy E&P Co.*, *L.P.,* 2019 WY 65, ¶ 7, 443 P.3d 838, 842 (Wyo. 2019).

## DISCUSSION

*Whether Mr. Steffey's No Contest Plea was Knowing and Voluntary.*

[¶19] A no contest plea, like a guilty plea, must be entered voluntarily, knowingly, and "'with sufficient awareness of the relevant circumstances and likely consequences.'"[7] *Williams v. State*, 2015 WY 100, ¶ 13, 354 P.3d 954, 959-60 (Wyo. 2015) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)). We look to the totality of the circumstances to determine whether a plea was knowing and voluntary. *Major v. State*, 2004 WY 4, ¶ 11, 83 P.3d 468, 472 (Wyo. 2004). "A guilty plea is valid where the totality of the circumstances demonstrates that a defendant made a voluntary and intelligent choice to plead guilty from alternative courses of action available to him and understood the consequences of his plea." *Maes*, ¶ 9, 114 P.3d at 710. Stated differently,

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Major*, ¶ 11, 83 P.3d at 472 (quoting *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472).

[¶20] Mr. Steffey does not contend his plea was the result of force, threats, or promises other than those contained in the plea agreement. Nor does he complain the court failed to comply with W.R.Cr.P. 11. Rather, he argues his plea was not knowing or voluntary because the totality of the circumstances show he did not fully understand the amended charge, the plea agreement, or the consequences of his plea, and he had insufficient time to speak with his attorney to discuss these matters prior to pleading guilty.

[¶21] The State contends Mr. Steffey's arguments are contrary to the record of the change of plea hearing, where the district court thoroughly explained to Mr. Steffey the crime, the potential sentence, including that probation was not a guarantee, the rights he would be waiving by pleading no contest and the consequences of the plea agreement. The State argues that while Mr. Steffey showed some confusion on two "minor" matters, the court

---

[7] Mr. Steffey's no contest plea is the functional equivalent of a nolo contendere plea and, for purposes of our review, "a nolo contendere plea is functionally equivalent to a guilty plea." *Major*, ¶ 11, 83 P.3d at 472 (citing *Becker v. State*, 2002 WY 126, ¶ 11, 53 P.3d 94, 98 (Wyo. 2002)); *Johnson v. State*, 6 P.3d 1261, 1262 n.1 (Wyo. 2000). *See also, Winsted*, ¶ 7, 241 P.3d at 499 ("For the purposes of an appeal, a plea of no contest is functionally equivalent to a guilty plea."); *Miller v. State*, 2006 WY 92, ¶ 6 n.2, 138 P.3d 688, 690 n.2 (Wyo. 2006) ("For purposes of appellate review, a nolo contendere (no contest) plea is functionally equivalent to a guilty plea.").

6

corrected any confusion and Mr. Steffey indicated he understood. The State also argues the brief interaction between Mr. Steffey and his counsel before his plea did not render it involuntary or unknowing. While it concedes this Court has yet to address such a claim, other jurisdictions have upheld pleas under similar circumstances when neither the defendant nor counsel requested additional time to consider the plea or where the defendant had failed to show how further consultation with counsel would have impacted his decision to plead.

[¶22] At the outset, we acknowledge Mr. Steffey told the district court at the change of plea hearing that he was entering his plea "voluntarily." Nevertheless, the totality of the circumstances in this case show his response to be unreliable. His plea was not knowing or voluntary because he did not understand the plea agreement or the consequences of his plea. Mr. Steffey's confusion was not about "minor" matters but was about the essence of the amended charge and the results of his plea.

[¶23] Mr. Steffey testified he was made aware of the amended charge and the plea agreement approximately 10 minutes prior to the change of plea hearing. His testimony went unrebutted. Indeed, the record shows the State moved to amend and did amend the charge on the same day Mr. Steffey entered his no contest plea. And, when asked at the change of plea hearing whether he had discussed the plea and plea agreement with counsel, Mr. Steffey replied, "Briefly, yes." Mr. Steffey testified his brief discussion with counsel before his plea was insufficient to allow him to understand the plea agreement. The record bears this out.

[¶24] During the change of plea hearing, the district court explained to Mr. Steffey the charge against him and the potential penalty. When asked whether he understood those items, Mr. Steffey responded affirmatively. The court then stated it had been notified a plea agreement had been reached between Mr. Steffey and the State. When the court asked whether that was Mr. Steffey's understanding, Mr. Steffey replied, "Could you please specify the agreement?" The judge responded: "I don't know what the agreement is. I was going to ask what the agreement was." At that time, Mr. Steffey turned to defense counsel. In other words, Mr. Steffey did not know the terms of the plea agreement.

[¶25] Defense counsel stated the terms of the plea agreement would be outlined later in the proceeding. Mr. Steffey responded, "Yeah, I understand that *there was an agreement*." This statement indicates Mr. Steffey did not know the terms of the agreement and was not a participant in the agreement. Later, the court asked Mr. Steffey whether the plea agreement "reflect[s] [his] entire agreement with the State of Wyoming." Mr. Steffey responded, "*I'm going to go ahead and agree with that*, your Honor, yes." Again, these responses demonstrate Mr. Steffey was aware an agreement existed, but he did not know its terms, and had not personally agreed to it until responding to the court.

7

[¶26]  His lack of understanding of the plea agreement was also on display when the court informed Mr. Steffey about the differences between W.R.Cr.P. 11(e)(1)(A) and (e)(1)(B) plea agreements.  The court told Mr. Steffey that in the Rule 11(a)(1)(A) context, if a court rejects the plea agreement, including any sentencing recommendations, a defendant may withdraw his plea.  However, in the Rule 11(e)(1)(B) context, which applied to him, if the court rejects the plea agreement, he could not withdraw his plea.  Mr. Steffey seemed to understand the court was not bound by the State's sentencing recommendation.  However, he expressed confusion as to whether he could withdraw his plea if the court rejected the recommended sentence.  Once the court corrected any confusion and explained the sentencing range, Mr. Steffey responded, "I understand – and just – *I'm trying to take it all in and comprehend it and make sure, you know, I completely understand . . . .*"  This response, as well as his other responses discussed above, show Mr. Steffey had little to no understanding of the plea agreement prior to the change of plea hearing.  He had to rely on the court and defense counsel to fill him in at the hearing.

[¶27]  The same can be said about his understanding of the consequences of his plea.  Defense counsel informed the court of the amended charge and outlined the terms of the plea agreement.  The court then asked Mr. Steffey whether he understood the agreement and the consequences thereof.  Mr. Steffey replied:  "*So instead of it being my second felony DUI, basically, it's going to be my first?*"  Both the court and defense counsel responded "no" and explained:

> COURT:  No, they're both all felonies.
> [DEFENSE COUNSEL]: They're all enhanced felony fourths.
> COURT:  It's because it's a fourth offense within –
> [MR. STEFFEY]:  Ten years?
> [DEFENSE COUNSEL]:  Ten years, yeah.
> COURT:  Right.  It doesn't matter that it's under what subsection.  You know, you've got the subsection that's incapable of safely driving, the under the influence of alcohol, in excess of .08 or .08 or greater, you have under the influence of drugs.
> [MR. STEFFEY]:  Right.
> COURT:  And you have – and then you have the third which is under the influence of a combination of –
> [MR. STEFFEY]:  Okay.
> COURT:  -- so it could be any one of those, but they're all DUIs, and that all get enhanced to a felony.

After this explanation, Mr. Steffey responded:  "Absolutely.  Yeah, I understand, and I'll just have to, you know, *study it a little bit more*."

[¶28] Despite Mr. Steffey indicating he needed more time, the court did not stop or otherwise stay the proceedings to allow Mr. Steffey additional time. Rather, the court immediately asked Mr. Steffey: "Okay. So do you feel like you understand the consequences of your . . . no contest plea? And do you want to go ahead with it today?" While Mr. Steffey responded "absolutely" and stated he wanted to proceed with his plea, his response was not trustworthy given his apparent lack of awareness and understanding of the terms of the plea agreement and the consequences of his plea, and his indication he needed more time to study the matter. *Cf. Caicedo-Gutierrez v. United States*, Nos. 8:08-CV-474-T-30TBM & 8:04-CR-374-T-30TBM, 2008 WL 3889716, *3 (M.D. Fla. Aug. 20, 2008) (unpublished) (habeas petitioner's claim that he did not know the terms of his plea agreement was directly contradicted by the record; during the change of plea hearing, he acknowledged under oath that an interpreter had read the plea agreement to him in Spanish, that he understood the agreement, and that nothing about the agreement confused him).

[¶29] The State argues: "That [a] defendant ha[s] questions addressed during a change of plea hearing must not mechanically render [his] plea[] invalid," nor should we penalize a district court for taking the time to address a defendant's concerns. We agree. The mere fact Mr. Steffey had questions during the change of plea hearing does not per se render his plea invalid; rather, the validity of a plea is decided in light of the totality of the circumstances. We also commend the district court for attempting to address Mr. Steffey's questions and correct his misunderstandings. The problem in this case, however, is that those attempts ultimately proved futile; Mr. Steffey indicated he needed more time to study the matter, but no additional time was given. Under the specific circumstances of this case, Mr. Steffey's plea was not knowing or voluntary.

### Whether the District Court Abused Its Discretion in Not Allowing Mr. Steffey to Withdraw His No Contest Plea.

[¶30] Rule 32(d) states in pertinent part: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of *any fair and just reason*."[8] (Emphasis added). *See also, Winsted*, ¶ 7, 241 P.3d at 499 ("The defendant has the burden of establishing a fair and just reason for withdrawal of a plea before sentence is imposed."). We have outlined seven non-dispositive factors to guide the district court in deciding whether the defendant has established a fair and just reason in support of a motion to withdraw his plea:

> (1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether

---

[8] A motion to withdraw a guilty plea may also be based on the district court's failure to comply with the requirements of Rule 11. *See Ortega-Araiza v. State*, 2014 WY 99, ¶ 24, 331 P.3d 1189, 1198 (Wyo. 2014); *Russell v. State*, 2013 WY 137, ¶ 17, 312 P.3d 76, 81 (Wyo. 2013). Mr. Steffey does not contend the court failed to comply with Rule 11, and he did not seek withdrawal on that basis.

the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Id.* (citing 3 Wright, King & Klein, Federal Practice and Procedure: Criminal 2d § 538 (Supp. 2001), and *United States v. Black*, 201 F.3d 1296, 1299-1300 (10th Cir. 2000)); *see also, Major*, ¶ 14, 83 P.3d at 473 ("Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea . . . . No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal.").

[¶31] The district court considered these factors and decided the second, third, fourth, and seventh factors weighed in favor of allowing Mr. Steffey to withdraw his plea; the State does not argue otherwise. As to the other three factors, the court concluded they weighed in favor of denying the motion to withdraw. Mr. Steffey agrees he made only a "bare assertion of innocence," which is not enough to satisfy the first *Frame* factor. *See Russell*, ¶¶ 22-24, 312 P.3d at 82-83 ("[A]n assertion of innocence based on admittedly speculative explanations unsupported by any evidence is not sufficient to show a fair and just reason for allowing a plea withdrawal."). He contends, however, the fifth and sixth factors weighed in favor of allowing him to withdraw. We agree.

[¶32] The district court erred in concluding the sixth *Frame* factor (whether the original plea was knowing and voluntary) weighed in favor of not allowing Mr. Steffey to withdraw. We have already explained that the totality of the circumstances reveal Mr. Steffey's plea to be unknowing and involuntary.

[¶33] With respect to the fifth factor (whether close assistance of counsel was present), the district court required Mr. Steffey to show counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[9]

---

[9] Mr. Steffey's second motion to withdraw his plea seemed to claim he was denied the effective assistance of counsel. At the hearing on the motion, however, he did not suggest his prior counsel's performance rose to the level of ineffective assistance of counsel. Nevertheless, the district court's analysis of the fifth *Frame* factor shows it applied the *Strickland* standard, even though it did not specifically cite *Strickland*.

To establish ineffective assistance of counsel, *Strickland* requires the defendant to show both "that counsel's performance was deficient" and that such deficiency "prejudiced the defense." *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. In concluding that Mr. Steffey had not established the fifth *Frame* factor, the court stated, "Mr. Steffey has not . . . shown counsel's performance was deficient or prejudicial to him." Similarly, in addressing Mr. Steffey's claim that counsel had only a brief discussion with him prior to the change of plea hearing, the court concluded it could not find any case where such brief interaction with

10

That was error. While ineffective assistance of counsel "may constitute a fair and just reason to grant a motion to withdraw," *Frame*, ¶ 8, 29 P.3d at 89, we have never held that a defendant must satisfy the *Strickland* standard in order to establish the fifth *Frame* factor. The State urges us to do so now because the *Strickland* standard is familiar and well-defined. We decline its request.

[¶34] The *Strickland* standard is familiar, but so is the close assistance of counsel factor. It has been a part of our jurisprudence since 2001, when *Frame* was decided. *Strickland* does establish a well-known two-prong test a defendant must satisfy in order to show his counsel was ineffective, i.e., deficient performance and prejudice. However, whether each of those two prongs has been satisfied is often fact intensive. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable *considering all the circumstances*"; "[i]n making [the prejudice] determination, a court hearing an ineffectiveness claim must consider *the totality of the evidence before the judge or jury*" (emphasis added)). In that respect, it is no different than our analysis under the fifth *Frame* factor. *See, e.g., Dobbins v. State*, 2012 WY 110, ¶¶ 56-60, 298 P.3d 807, 822-23 (Wyo. 2012); *Winsted*, ¶ 11, 241 P.3d at 500; *Demeulenaere v. State*, 2008 WY 147, ¶ 20, 197 P.3d 1238, 1243 (Wyo. 2008).

[¶35] Turning to the fifth *Frame* factor, we have described the close assistance of counsel factor as requiring counsel's assistance to be adequate and available. *See Doles v. State*, 2002 WY 146, ¶ 22, 55 P.3d 29, 33 (Wyo. 2002). *See also, Winsted*, ¶¶ 12, 14, 17, 241 P.3d at 500-502 (upholding district court's determination that each of the *Frame* factors weighed against allowing defendant to withdraw his plea, including its decision that the fifth factor was not satisfied because "there is nothing to suggest that appointed counsel's assistance was inadequate or unavailable"). The record in this case shows counsel's assistance was neither.

[¶36] Mr. Steffey testified counsel met with him only four times prior to pleading no contest and ignored his requests to review the discovery. That discovery included security footage from the detention center, which captured the officers' administration of the breathalyzer test, including their failure to follow protocol. The State turned this footage over to defense counsel in April 2017, and again in June 2017. Yet, based on the record,

---

counsel constituted "ineffective assistance of counsel." Moreover, in addressing Mr. Steffey's claim that counsel told him he would receive probation, the district court concluded "a mere mistaken prediction of a sentencing range is not per se ineffective assistance of counsel." The court also implicitly applied the *Strickland* test when addressing Mr. Steffey's various complaints against counsel. For example, the court decided counsel's failure to discuss the faulty breathalyzer test with Mr. Steffey prior to discussing it with the prosecutor was immaterial because Mr. Steffey had not shown how that discussion affected his plea or how it would have benefitted him to raise the faulty test at trial since the State had anticipated amending the charge and the faulty test could not have been used as a defense to the amended charge. In other words, even if counsel was deficient, the court concluded such deficiency did not prejudice Mr. Steffey.

counsel never reviewed this discovery with Mr. Steffey, nor did he inform Mr. Steffey of the officers' failure to follow protocol until August 10, 2017. And he did so only 5-10 minutes prior to the change of plea hearing. During that same short timeframe, he also informed Mr. Steffey of the amended charge and the plea agreement. In discussing the plea agreement, counsel did not promise Mr. Steffey he would receive probation, but he did lead him to believe he would receive probation.

[¶37] Importantly, Mr. Steffey's testimony on these matters was not contradicted, and the district court accepted it. *Cf. Miller*, ¶¶ 7-10, 138 P.3d at 690-91 (district court did not abuse its discretion in denying defendant's presentence motion to withdraw his pleas; while defendant testified to deficiencies in counsel's representation, the court decided his testimony was not credible in light of contrary testimony by defense counsel). While counsel's performance may not have risen to the level of ineffective assistance of counsel, the record does not show counsel was available or his assistance was adequate to ensure Mr. Steffey made an informed decision when he entered his plea. And, as we have already explained, the record shows Mr. Steffey did not in fact make an informed or voluntary decision to plead no contest as a result. Properly analyzed, the fifth *Frame* factor weighs in favor of allowing Mr. Steffey to withdraw his plea.[10]

[¶38] In sum, the district court erred in applying the fifth and sixth *Frame* factors. Such errors amount to an abuse of discretion. *See Grove*, ¶ 6, 110 P.3d at 278 ("[a]n abuse of discretion can exist if . . . *the correct law has been applied but incorrectly interpreted, or if the correct law has been improperly applied*" (emphasis added)); *see also, Finley Res., Inc.*, ¶ 7, 443 P.3d at 842.[11]

---

[10] The district court emphasized Mr. Steffey's claim at the change of plea hearing to be satisfied with counsel. However, Mr. Steffey did so "with an explanation":

> I – you know, I understand [defense counsel being] in Sweetwater County and me being in Natrona [County] that, with his caseload, the amount of cases that he had, I just -- I was hoping that I [would be] able to spend a little bit more time with him on my case, be able to go over discovery and be in contact with each other quite a bit more. Other than that, I mean, yeah, he – he was the man for the job. He represented me, and he – this is the – this is what we agreed upon, so other than him being overworked, I think, by the Public Defender's Office, other than that, he's fine.

This explanation supports Mr. Steffey's claim that counsel had little contact with him prior to the change of plea hearing.

[11] Although we have held none of the *Frame* factors to be dispositive, we have suggested the voluntariness of the plea (the sixth factor) is a significant factor. *See Frame*, ¶ 7, 29 P.3d at 89 ("A defendant has no absolute right to withdraw a plea of guilty before sentence is imposed, and where the strictures of W.R.Cr.P. 11 have been met, *and the defendant intelligently, knowingly, and voluntarily entered into his plea of guilty*, the district court's decision to deny such a motion is within its sound discretion." (Emphasis added) (citing *Burdine v. State*, 974 P.2d 927, 929-30 (Wyo. 1999); 3 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d § 538 (1982 and Supp. 2001))). Other courts have described the first (assertion of innocence), fifth (close assistance of counsel) and sixth (voluntariness of the plea) factors as the most

## CONCLUSION

[¶39] Mr. Steffey's no contest plea was not knowing or voluntary and the district court abused its discretion in denying his motions to withdraw his plea.

[¶40] We reverse and remand.

---

important in evaluating whether a defendant has established a "fair and just reason" for withdrawal of his guilty plea. *See United States v. Qualls*, 741 F. App'x 592, 597 (10th Cir. 2018) (unpublished) (citing *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009)); *United States v. Santiago Miranda*, 654 F.3d 130, 136 (1st Cir. 2011); *United States v. Berkeley*, 567 F.3d 703, 708 (D.C. Cir. 2009); *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995). Under this reasoning, the district court's errors went to two of the most important factors in deciding whether to allow a defendant to withdraw his plea.