# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 126

OCTOBER TERM, A.D. 2022

October 11, 2022

SEAN LOGAN PETTUS,

**Appellant**
**(Defendant),**

v.

S-22-0045

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Goshen County*
*The Honorable Patrick W. Korell, Judge*

*Representing Appellant:*
Office of Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Timothy P. Zintak*, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice**

[¶1]     Sean Pettus pled no contest to second-degree murder and guilty to one count of first-degree arson, one count of felony theft, and two counts of felony burglary.  He filed a pre-sentence motion to withdraw his no-contest plea, which was denied.  He argues the district court abused its discretion when it denied his motion.  We affirm.

## ISSUE

[¶2]    The dispositive issue is whether the district court abused its discretion when it denied Mr. Pettus's pre-sentence motion to withdraw his no-contest plea.

## FACTS

[¶3]    On April 20, 2021, the Torrington Police Department investigated a fire at a commercial building occupied by a hair salon and a tattoo parlor.  Sean Pettus operated the tattoo parlor.  The fire caused significant damage to both halves of the building.  The Fire Marshall determined the fire was set in the hair salon, and it appeared an accelerant had been used.  The police received a report that Mr. Pettus went to the Smoker Friendly convenience store shortly after the fire had started where he stole a bottle of whiskey and left behind a sweatshirt that smelled strongly of gasoline.  Mr. Pettus then stole a 2007 Ford Taurus, which had been left running a short distance away from the Smoker Friendly.  Officers later found Mr. Pettus inside the stolen vehicle.  While being booked into the jail, officers discovered several handfuls of loose change in his pants pockets, which Mr. Pettus admitted he took from the car.  The State initially charged Mr. Pettus with one count of first-degree arson and one count of felony theft.

[¶4]    While investigating the fire, officers learned Mr. Pettus's significant other, Madison Cook, was missing, and no one had seen or heard from her since April 18, 2021.  Officers went to the apartment where Mr. Pettus and Ms. Cook were known to reside.  When no one answered the door, the officers entered the apartment out of concern for Ms. Cook's safety.  The officers discovered Ms. Cook was deceased.  The Goshen County Coroner ruled Ms. Cook's death a homicide, and the cause of death was preliminarily determined to be a combination of multiple stab wounds and asphyxiation.  The autopsy also showed blunt-force trauma to Ms. Cook's right eye and a subdural hematoma on the upper portion of her brain, which was consistent with trauma to the back of her head.  The State subsequently filed an Amended Information, charging Mr. Pettus with a total of five counts: 1) murder in the first degree; 2) first-degree arson; 3) felony theft; 4) burglary, relating to the arson charge; and 5) burglary, relating to the theft charge.

[¶5]    Defense counsel filed a motion for a competency evaluation before Mr. Pettus was arraigned.  No action had been taken on the motion for a competency evaluation prior to his arraignment.  At the arraignment, the district court advised Mr. Pettus about his constitutional and statutory rights, his presumption of innocence, the pleas that were

1

available to him, and the consequences of a felony conviction. The district court also advised Mr. Pettus about the consequences of entering a guilty or no-contest plea:

> If today or at any time during these proceedings you decide to enter a guilty plea or even a no contest plea then there is no trial in this matter and all of those rights that I just spoke to you about are waived and the only issue left for this court to determine is an appropriate sentence.

The district court reviewed the Amended Information with Mr. Pettus and informed him about the possible penalties for each charge. Before Mr. Pettus entered a plea, defense counsel reminded the district court there was a pending motion for a competency evaluation. The district court entered an order requiring a competency evaluation.

[¶6] The competency evaluation was completed and filed with the court. The evaluator opined Mr. Pettus was feigning symptoms of mental illness and malingering in the hope it would have a positive impact on his case. The evaluator diagnosed Mr. Pettus with major depressive disorder, a severe substance use disorder, and malingering. She opined Mr. Pettus was competent to proceed even though he had a serious mental illness. Defense counsel requested a second evaluation, and the district court entered an order granting that request. Mr. Pettus subsequently withdrew his request for a second competency evaluation, and the State and Mr. Pettus accepted the findings of the first evaluation. After determining Mr. Pettus was competent to proceed, the district court quashed the order requiring the second evaluation.

[¶7] The district court held a continued arraignment and a change of plea hearing on August 23, 2021. At this hearing, the district court reminded Mr. Pettus of what occurred at his arraignment, and it asked Mr. Pettus if he wanted to go over everything again. Mr. Pettus replied no. Despite this response, the district court again advised Mr. Pettus about his rights. Mr. Pettus indicated he did not have any questions about his rights. The district court asked Mr. Pettus whether he had had adequate time to consult with his attorneys and if he was satisfied with their representation. Mr. Pettus answered yes to both questions. The district court then engaged in the following colloquy with Mr. Pettus:

> THE COURT: Now, Mr. Pettus, I understand you may have entered into a plea agreement or want to enter into a plea agreement. Is that your understanding?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Mr. Pettus, importantly, has anybody forced or threatened you in any way to get you to plead a certain way today?

2

THE DEFENDANT: No.

THE COURT: Has anybody made any promises or inducements to get you to plead a certain way today, other than this plea agreement that I am about to hear?

THE DEFENDANT: No.

THE COURT: Mr. Pettus, I need to have you make eye contact with me for a moment. Do you know of any reason at all that this court should not proceed with this change of plea hearing today?

THE DEFENDANT: No.

THE COURT: Very good.

The State set forth the details of the plea agreement, and defense counsel confirmed the State accurately recited its terms. The district court advised Mr. Pettus as follows:

[THE COURT] Mr. Pettus, I want to understand this plea agreement the same way. This is an important stage of these proceedings. This plea agreement calls for you to plead no contest to an amended charge in Count I, from first degree to second degree murder. The state would rely upon an affidavit of probable cause, which has been provided to you, to support the facts that the state believes to be true in this matter and you would agree by a no contest plea not to contest those facts. I would ask you whether the state can prove those facts or present that and whether that would be enough to convict you beyond a reasonable doubt, but I won't ask you about any statements in Count I.

Count II, III, IV and V, you would agree to plead guilty to and, Mr. Pettus, I would have to hear from you what happened to cause you to plead guilty to Counts II, III, IV and V. As part of this plea agreement, Mr. Pettus, this is provided under Rule 11 and that particular rule is 11(e)(B), and it talks about plea agreement procedures. Plea agreements "In General. The attorney for the state and the attorney for the defendant or the defendant when acting pro se," meaning self-represented, "may engage in discussions with a view toward reaching an

3

agreement that, upon the entering of a plea of guilty or nolo contendere" -- no contest – "to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:"

"(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." The state can also "Agree not to prosecute other crimes" or the court can hear and the parties can "Agree that a specific sentence is the appropriate disposition of this case."

The rule then goes on to provide that the plea agreement has to be fully disclosed to the court and if the court accepts the plea agreement I am to inform you that the judgment and sentence will embody the terms and dispositions required in the agreement. The court can reject the agreement. The court can also upon entry of a plea give you a different sentence should the court deem appropriate.

Mr. Pettus, I told you that courts hear plea agreements all the time and I will, certainly, strongly consider a plea agreement, but the court reserves the right to give you any sentence the court deems appropriate. Do you understand?

THE DEFENDANT: Yes.

THE COURT: And Count I is a significant reduction -- or a reduction, I should say, from a first degree murder charge to a second degree so you get the benefit of that under the plea agreement. The plea agreement calls for you to serve a life sentence. The plea agreement calls for the state to recommend consecutive sentences and you agree that that is appropriate. And, Mr. Pettus, any deficiencies or issues that have arisen to date that could cause an appeal, you agree to waive any of those issues to date. So essentially the clock would be starting new and the court would if it accepts the plea agreement enter your pleas. I would order a presentence investigation report. You would be ordered to cooperate in that report and we would be back here in about 60 days. You do not give up your right to appeal any sentence from this court should you deem appropriate. Do you understand?

THE DEFENDANT: Yes.

[¶8]   The district court asked Mr. Pettus if he had consulted with his attorneys about the consequences of the plea agreement.  Mr. Pettus replied yes.  The district court then informed Mr. Pettus about the elements of and possible penalties for the amended charge of second-degree murder.  The district court informed Mr. Pettus "[t]he recommendation pursuant to the plea agreement is . . . that the court consider a life sentence with potential consecutive sentences on Counts II, III, IV and V."  Mr. Pettus accepted the sentencing recommendation.  The district court asked Mr. Pettus if he had any questions for the court, and Mr. Pettus indicated he did not.  The district court asked Mr. Pettus if he wanted to speak with his attorneys before entering his pleas, and Mr. Pettus replied no.

[¶9]   Mr. Pettus then pled no contest to amended Count I and guilty to Counts II-V.  As to Count I, the district court asked Mr. Pettus if he contested the facts set forth in the affidavit of probable cause, and Mr. Pettus indicated he did not contest those facts.  Mr. Pettus admitted the State would be able to prove those facts at trial, and those facts would be sufficient to prove his guilt beyond a reasonable doubt.  The district court accepted his no-contest plea to Count I.  Mr. Pettus then provided factual bases for Counts II-V.  The district court asked Mr. Pettus if he knew of any reason the district court should not accept his pleas, and he responded no.  Mr. Pettus indicated no one forced or threatened him to enter the pleas, and other than the plea agreement, no one made any promises or offered inducements to get him to enter his pleas.  Mr. Pettus again indicated he was satisfied with his attorneys' representation and had sufficient time to talk to his attorneys before entering his plea.  The district court found Mr. Pettus voluntarily entered his pleas and he provided sufficient factual bases for the guilty pleas.  The district court entered the guilty pleas and the no-contest plea on the record.

[¶10]  On October 8, 2021, Mr. Pettus filed a pro se motion to withdraw his no-contest plea.  He alleged he made the decision to enter the no-contest plea due to ineffective assistance of counsel.  He asserted he had been misinformed about his right to appeal the no-contest plea.  He also alleged he had new evidence–which contradicted previous information regarding his whereabouts for the days in question–that was unknown at the time of the plea.  He asked the district court to allow him to withdraw his plea and begin the process of proving his innocence.  The "new evidence" Mr. Pettus spoke of was in the form of an unsworn letter from a neighbor who claimed Mr. Pettus had been staying with him during the time the murder was alleged to have taken place.  This letter contradicted statements Mr. Pettus made to law enforcement about where he was during that period.

[¶11]  On October 14, 2021, one of Mr. Pettus's attorneys withdrew and new counsel entered an appearance on his behalf.  On November 3, 2021, defense counsel filed a motion to vacate the sentencing hearing and reset it after the district court disposed of the pro se motion to withdraw the no-contest plea.  The district court vacated the sentencing hearing

and set a hearing on the pro se motion for November 19, 2021. On November 16, 2021, defense counsel filed a motion to withdraw the no-contest plea. That motion indicated Mr. Pettus felt inadequately informed regarding his appellate rights, which meant he had not knowingly entered his plea, and he wished to assert his innocence. It did not reassert Mr. Pettus's claim about newly discovered evidence.

[¶12] At the hearing on the motion to withdraw the no-contest plea, defense counsel argued Mr. Pettus wanted to assert his factual innocence, the State would not be prejudiced by any delay caused by allowing him to withdraw his no-contest plea, and he had not received close assistance of counsel because he was not properly informed about the appellate rights he was waiving by entering a no-contest plea. The district court asked defense counsel to clarify how Mr. Pettus had been improperly advised about his appellate rights. Defense counsel stated that both a no-contest plea and a guilty plea retain the same issues on appeal, asserting "the distinction between a guilty plea and a no contest plea I think are minimal if at all existent, but essentially it's factual innocence, Your Honor."

[¶13] The State argued the district court thoroughly advised Mr. Pettus of the consequences of his no-contest plea, and it had taken great pains to ensure the plea was knowingly and voluntarily entered. Mr. Pettus had sufficient time to discuss the plea with his attorneys, and he was satisfied with his attorneys' representation. The State asserted Mr. Pettus failed to produce any evidence to establish he did not understand the plea agreement, and it intended to put on "some evidence" to support denying the motion.

[¶14] Defense counsel argued advisements under Rule 11 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.) do not include an advisement regarding appellate rights, and the task of giving such an advisement fell upon either the district court or counsel. He asked the district court to find there was a fair and just reason to allow Mr. Pettus to withdraw his plea. The district court gave Mr. Pettus the opportunity to present evidence in support of his motion, but he declined to do so.

[¶15] The district court allowed the State to put on evidence in opposition to the motion. Without any objection from defense counsel, the State played a video recording of a visit Mr. Pettus had with someone while he was in jail. In this recording, Mr. Pettus states he was going to try to withdraw his plea on the grounds of ineffective assistance of counsel, but he was not sure this would be successful because his attorneys told him not to enter the no-contest plea. The State argued this proved Mr. Pettus had a working relationship with his previous attorneys, and he knowingly and voluntarily entered the no-contest plea against the advice of counsel. The State called the probation officer who wrote the presentence investigation in Mr. Pettus's case. He testified that while preparing the report, he asked Mr. Pettus to explain his understanding of the plea agreement. Mr. Pettus told the probation officer:

6

> [Mr. Pettus] was to plead no contest to murder in the second degree and guilty to the remaining counts. That in exchange for his—those pleas he would receive a life sentence for the murder in the second degree count and he would receive a total of 50 years in prison consecutively to that from the remaining counts.

The probation officer did not recall discussing Mr. Pettus's understanding of his appellate rights.

[¶16]   The district court gave defense counsel the opportunity to make a closing argument, but he chose to rest on his previous argument.  The State argued Mr. Pettus fully understood the plea agreement and chose to enter the plea against the advice of his attorneys.  The State asked the district court to find there was no fair and just reason to allow Mr. Pettus to withdraw his no-contest plea.

[¶17]   The district court took a brief recess to consider the motion.  The district court reviewed the transcript of Mr. Pettus's arraignment and found the advisements it had given him at that hearing comported with W.R.Cr.P. 11.  The district court also reviewed the transcript of the change of plea hearing and found Mr. Pettus had stated he consulted with counsel about the plea, he was satisfied with his attorneys' representation, and he did not need more time to discuss the plea deal with counsel.  The district court found that while Mr. Pettus had not expressly waived his appellate rights, he had not reserved any issues for appeal.  Mr. Pettus could still appeal his sentence, any issues relating to the district court's jurisdiction over his case, and whether his plea was voluntary.  The district court stated it was Mr. Pettus's burden to prove he received ineffective assistance of counsel.  The district court found:

> [T]oday was the time, Mr. Pettus, for you to present evidence of the basis for you to withdraw your plea and you did not do so. You chose not to present evidence today. The court is left then with the only evidence about any of your representation from two parts. One, you told me you were satisfied with counsel who provided you representation at the time you changed your plea. And two, according to your own words monitored by video and audio, your attorneys gave you advice potentially not to change your plea at that time. And it tells the court that you conscientiously, on your own, made a decision to change your plea and to plead no contest. That those facts were supported by an affidavit of Officer Wakamatsu, and you agreed and stipulated the state could present that evidence and that that would prove you guilty beyond a reasonable doubt if

7

the state were able to present that at trial. And you told me they would be able to.

The district court analyzed the seven factors set forth in *Frame v. State*, 2001 WY 72, ¶ 7, 29 P.3d 86, 89 (Wyo. 2001). After weighing those factors, the district court found Mr. Pettus failed to establish a basis to withdraw his no-contest plea, and it denied his motion.

[¶18] At Mr. Pettus's request, the district court proceeded to sentencing that day. Consistent with the plea agreement, Mr. Pettus received the following sentences, which were to be served consecutively: Count I, life according to law; Count II, 14-20 years in prison; Count III, 5-10 years in prison; Count IV, 5-10 years in prison; and Count V, 5-10 years in prison. This appeal timely followed.

## DISCUSSION

[¶19] A defendant does not have an absolute right to withdraw his plea before sentencing, and the district court is vested with discretion to determine whether to grant or deny a motion to withdraw a plea. *Delgado v. State*, 2022 WY 61, ¶ 26, 509 P.3d 913, 922–23 (Wyo. 2022); *Russell v. State*, 2013 WY 137, ¶ 12, 312 P.3d 76, 78–79 (2013).

> Withdrawal of a plea before sentencing is governed by W.R.Cr.P. 32(d) which states: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."

*Wanberg v. State*, 2020 WY 75, ¶ 15, 466 P.3d 269, 273 (Wyo. 2020). "A fair and just reason includes inadequate plea colloquies, newly discovered evidence, intervening circumstances, or other reasons that did not exist when the defendant entered his plea." *Winsted v. State*, 2010 WY 139, ¶ 16, 241 P.3d 497, 501 (Wyo. 2010) (citing *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004)). "[A] change of mind or belated misgivings about entering a plea do not constitute a fair and just reason for allowing a plea withdrawal." *Russell*, 2013 WY 137, ¶ 24, 312 P.3d at 83 (citing *Winsted,* ¶ 16, 241 P.3d at 501).

[¶20] "'The defendant has the burden of establishing a fair and just reason' to withdraw a plea under W.R.Cr.P. 32(d)." *Delgado*, 2022 WY 61, ¶ 25, 509 P.3d at 922 (quoting *Wanberg*, ¶ 15, 466 P.3d at 273). "In determining whether the district court erred by denying a Rule 32(d) motion to withdraw, this Court treats no contest pleas like guilty pleas." *Id.* at ¶ 26, 509 P.3d at 922–23 (citing *Winstead*, ¶ 7, 241 P.3d at 499). We review the district court's denial of a motion to withdraw a no-contest plea for an abuse of discretion. *Id.* (citing *Wanberg*, ¶ 14, 466 P.3d at 273). "The core of our inquiry is the reasonableness of the district court's decision." *Id.* (citing *Russell*, ¶ 9, 312 P.3d at 78). "A

court abuses its discretion only when it could not reasonably decide as it did." *Id.* (quoting *Wanberg*, ¶ 14, 466 P.3d at 273).

**Frame Factors**

[¶21]  "We have identified a nonexclusive list of seven factors, often referred to as the *Frame* factors, to assist courts in determining whether a defendant has established a fair and just reason to withdraw his plea." *Id.* at ¶ 27, 509 P.3d at 923 (citing *Wanberg*, ¶ 16, 466 P.3d at 273).  Those factors are:

> (1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Id.* (quoting *Wanberg*, ¶ 16, 466 P.3d at 273.  These factors are not exclusive or exhaustive, and they "do not provide a numerical calculation indicating when a 'fair and just reason' exists for withdrawal of a plea." *Wanberg*, ¶ 16, 466 P.3d at 273.

> Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea . . . . No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal.

*Id.* (quoting *Major v. State*, 2003 WY 4, ¶ 14, 83 P.3d 468, 473 (Wyo. 2004)).

[¶22]  The district court made findings on all seven *Frame* factors.  Mr. Pettus does not challenge any of the district court's factual findings.  Instead, he challenges the district court's ultimate decision to deny his motion.  He asserts the district court erred when it placed most of the weight on the sixth factor, whether the plea was knowing and voluntary, and the fifth factor, whether he had received close assistance of counsel.  Finally, he asserts the district court erred when it did not consider his claim about newly discovered evidence.

## A.  First Factor – Assertion of Innocence and Newly Discovered Evidence

[¶23]  Mr. Pettus argues the district court erred when it did not consider his claim about

newly discovered evidence mentioned in his pro se motion. Although his brief does not state which of the *Frame* factors this claim falls under, the State characterized it as falling under the first factor, his assertion of innocence.

[¶24] Newly discovered evidence can constitute a fair and just reason to allow a defendant to withdraw his plea. *Winsted*, 2010 WY 139, ¶ 16, 241 P.3d at 501 (citing *Ortega–Ascanio*, 376 F.3d at 883). However, "an assertion of innocence does not by itself establish a fair and just reason for allowing plea withdrawal." *Russell*, 2013 WY 137, ¶ 20, 312 P.3d at 82. Mr. Pettus was obligated to present nonspeculative, credible evidence of his innocence. *Delgado*, ¶ 30, 509 P.3d at 923–24 (citing *Russell*, ¶¶ 22–23, 312 P.3d at 82–83); *see also United States v. Byrum*, 567 F.3d 1255, 1264–65 (10th Cir. 2009) ("the defendant must present a credible claim of legal innocence").

[¶25] Where a defendant fails to offer evidence to support his claim of innocence, it is proper for a court to deny the motion to withdraw a no-contest plea. *Russell*, ¶ 22, 312 P.3d at 82. The district court gave Mr. Pettus the opportunity to present evidence in support of his motion. Mr. Pettus declined this invitation and chose not to testify, call any other witnesses, or offer any affidavits setting forth credible new evidence of his innocence. Therefore, Mr. Pettus "completely failed to meet his burden" of establishing this "new evidence" was a fair and just reason to withdraw his no-contest plea. *Wanberg*, 2020 WY 75, ¶ 25, 466 P.3d at 275.

## B. Factor 5 – Close Assistance of Counsel

[¶26] The district court determined Mr. Pettus received close assistance of counsel and chose to plead no contest against the advice of counsel. Mr. Pettus argues the district court erred when it found he received close assistance of counsel because it focused on whether "he was advised about the mere entry of a no contest plea by counsel rather than on [his] claims in his motion that he felt that his defense counsel did not fully advise [him] about the *consequences* of a no contest plea." He asserts although he entered his no-contest plea against the advice of counsel, he did so because his attorney advised him a no-contest plea would allow him to assert his factual innocence on appeal. The State asserts Mr. Pettus's allegation regarding incorrect advice about his appellate rights does not fall under the close assistance of counsel prong, but it is instead more consistent with a claim of ineffective assistance of counsel. Mr. Pettus's pro se motion also characterized his claim as one of ineffective assistance of counsel.

[¶27] "While ineffective assistance of counsel 'may constitute a fair and just reason to grant a motion to withdraw,' we have never held that a defendant must satisfy the *Strickland* standard in order to establish the fifth *Frame* factor." *Steffey v. State*, 2019 WY 101, ¶ 33, 449 P.3d 1100, 1108–09 (Wyo. 2019)) (internal citation omitted). While the *Strickland* test requires a defendant to prove his counsel's performance was deficient and it caused prejudice, the fifth *Frame* factor requires "counsel's assistance to be adequate

and available." *Id.* at ¶¶ 34–35, 449 P.3d at 1109. A review of the record shows Mr. Pettus failed to establish either that he did not receive close assistance of counsel or that his counsel was ineffective.

[¶28] Mr. Pettus did not put on any evidence to show his attorney refused to meet with him, ignored any of his requests, was otherwise unavailable to assist him, or his relationship with counsel was contentious or lacked communication. *Delgado*, 2022 WY 61, ¶ 41, 509 P.3d at 926 (citing *Steffey*, ¶ 36, 449 P.3d at 1109; *Major*, ¶ 17, 83 P.3d at 474). The only evidence the district court had to consider regarding close assistance of counsel was Mr. Pettus's statements at the change of plea hearing and on the video that was admitted into evidence at the hearing. This evidence established Mr. Pettus had adequate time to consult with his attorneys about the consequences of entering the no-contest plea, he was satisfied with his attorneys' representation, and he entered his no-contest plea against the advice of counsel. The district court reasonably concluded Mr. Pettus received close assistance of counsel. *See Delgado*, ¶ 41, 509 P.3d at 926.

[¶29] To succeed on a claim of ineffective assistance of counsel, Mr. Pettus had the burden of proving both that his former attorneys' performance was deficient, and he was prejudiced as a result. *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936-37 (Wyo. 2022) (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351–52 (Wyo. 2021)). A no-contest plea "waives all issues but those related to jurisdiction and voluntariness of the plea." *Popkin v. State*, 2018 WY 121, ¶ 12, 429 P.3d 53, 55 (Wyo. 2018) (quoting *Hagen v. State*, 2014 WY 141, ¶ 9, 336 P.3d 1219, 1222 (Wyo. 2014)). If Mr. Pettus's former attorneys advised him he could raise his factual innocence on appeal, such advice would have been erroneous and might have been sufficient to prove the deficient performance prong of the ineffective assistance of counsel test. However, although the district court gave Mr. Pettus the opportunity to present evidence to support his claims, he chose not to do so. He did not offer his own testimony or that of any other witness to show the erroneous advice had been given or that it was the impetus for his decision to change his plea. Mr. Pettus also failed to offer any evidence to show he would have obtained a more favorable result by going to trial, which is required to satisfy the prejudice prong of the *Strickland* test. *Steplock*, ¶ 20, 502 P.3d at 937 (quoting *Neidlinger*, ¶ 53, 482 P.3d at 351–52). The district court had no evidence from which it could conclude Mr. Pettus received ineffective assistance of counsel, and it did not abuse its discretion when it denied his motion to withdraw his no-contest plea on that basis.

## C. Factor 6 – Knowing and Voluntary Plea

[¶30] A no-contest plea must be entered knowingly and voluntarily. *Delgado*, 2022 WY 61, ¶ 42, 509 P.3d at 926 (citing *Steffey*, 2019 WY 101, ¶ 19, 449 P.3d at 1105; *Dobbins v. State*, 2012 WY 110, ¶ 62, 298 P.3d 807, 824 (Wyo. 2012)).

11

For a plea to be knowing, the court must properly advise the defendant and ensure he understands the "nature of the plea, the penalties, including the potential maximum sentence associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accepts the plea."

*Id.* (quoting *Major v. State*, 2003 WY 4, ¶ 23, 83 P.3d at 478-79). "We look to the totality of the circumstances to determine whether a plea was knowing and voluntary." *Steffey*, 2019 WY 101, ¶ 19, 449 P.3d at 1105 (citing *Major*, ¶ 11, 83 P.3d at 472).

[¶31] Mr. Pettus asserts his plea was "unknowing" because his former attorneys inadequately informed him about the consequences entering a no-contest plea would have on his appellate rights. Because Mr. Pettus chose not to present any evidence at the hearing on his motion, the only evidence the district court had before it was his statements at the change of plea hearing that he understood the consequences of entering a no-contest plea, and his statements on the video indicating he entered his no-contest plea against the advice of his attorneys. The district court had no evidence from which it could conclude Mr. Pettus had not been properly advised about his appellate rights, or that such an erroneous advisement prompted him to enter his plea. The record supports the district court's finding that Mr. Pettus voluntarily entered his no-contest plea, and the district court did not abuse its discretion when it found this factor weighed against granting the motion to withdraw his no-contest plea.

[¶32] Mr. Pettus had the burden of establishing a fair and just reason to withdraw his plea. *Delgado,* 2022 WY 61, ¶ 25, 509 P.3d at 922 (quoting *Wanberg*, 2020 WY 75, ¶ 15, 466 P.3d at 273). The district court thoroughly considered all the *Frame* factors and determined he failed to meet that burden. Given the facts and circumstances presented at the hearing, the district court's decision to deny his motion was reasonable. *Winsted*, 2010 WY 139, ¶ 17, 241 P.3d at 502.

## CONCLUSION

[¶33] The district court correctly exercised its discretion in denying Mr. Pettus's W.R.Cr.P. 32(d) motion because he failed to meet his burden of establishing there was a fair and just reason to allow him to withdraw his no-contest plea. Affirmed.