2002 WY 147

**Kenneth KITZKE, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 01–19.

Supreme Court of Wyoming.

Oct. 2, 2002.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Assistant Appellate Counsel.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] This is an appeal from a Judgment and Sentence entered by the district court on December 14, 2000. The appellant, Kenneth Kitzke (Kitzke), initially pled not guilty to seven drug charges, but later entered into a plea agreement whereby he unconditionally pled guilty to possession of marijuana with intent to deliver, a felony, in violation of Wyo. Stat. Ann. § 35–7–1031 (LexisNexis 2001).[1] In exchange, the State dismissed the remaining six counts. The district court sentenced Kitzke to 96 months to 120 months incarceration, to be served consecutively to the sentence he was then serving in the Washington state penitentiary. Kitzke appealed, alleging that his trial counsel was ineffective for fail-

---

* *Chief Justice at time of oral argument.*

1. Kitzke was charged under Wyo. Stat. Ann. § 35–7–1031 (1977) (as amended). While this statute was amended in 1985, 1995, 1996, and 1998, the subsection dealing with possession of a controlled substance with intent to deliver has not changed, and, therefore, we will refer to the 2001 statute.

ing to file a motion to suppress certain evidence and failing to prepare for sentencing.

[¶ 2]   We affirm.

## ISSUES

1.   Was Kitzke's counsel ineffective in failing to file a motion to suppress evidence obtained in violation of Kitzke's rights under both the United States and Wyoming Constitutions? [2]

2.   Was Kitzke's counsel ineffective in failing to file a motion to suppress evidence because a thermal heat-imaging device was used on Kitzke's residence without a search warrant?

3.   Was Kitzke's counsel ineffective in failing to prepare for sentencing?

## FACTS

[¶ 3]   On March 9, 1998, sheriff's deputies learned from some juveniles that Kitzke was growing marijuana in a trailer with multiple locks on the door, located behind his residence on his property in Natrona County. Kitzke's stepson had told the juveniles about the drug-growing operation.   On the same day, the police verified the juveniles' report by identifying the trailer and noting what appeared to be multiple locks on its door. Police also verified that Kitzke owned the land on which the trailer was located. The police checked Kitzke's criminal history and found that he had been convicted of drug-related offenses in Oregon and Wyoming, including manufacturing a controlled substance.

[¶ 4]   Officers then obtained and executed a search warrant on Pacific Power and Light Company.   The power company's records indicated that the electricity demand for Kitzke's property was more than twice that of similar properties and structures in the area. Using this and other information, the officers next obtained a search warrant for Kitzke's property.   A search of the locked trailer revealed seeds, pipes, scales, ammunition, a .32 caliber revolver, airline tickets, equipment for growing marijuana and psilocybin mushrooms, plus various bags of marijuana.

[¶ 5]   On May 12, 1998, an Information was filed in the Natrona County Court (now referred to as circuit court) charging Kitzke with seven drug violations.[3]   Kitzke was in prison in the state of Washington, but he requested disposition of the Wyoming case via the Interstate Agreement on Detainers. He was arrested on the Wyoming warrant on July 20, 2000.   Kitzke pled not guilty at arraignment in the district court on August 10, 2000.   The district court set a jury trial for October 2, 2000, but on September 29, 2000, the State requested a setting for a change of plea hearing.   The district court held the hearing on October 24, 2000, and accepted a plea agreement whereby Kitzke unconditionally pled guilty to one count of possession of marijuana with intent to deliver, in exchange for the State dismissing the six remaining counts.

[¶ 6]   Sentencing occurred on December 5, 2000.   The appellant received a sentence of incarceration for not less than 96 months and not more than 120 months.   The district court ordered this sentence to be served consecutively to the sentence Kitzke was serving in Washington.

## DISCUSSION

■  [¶ 7]   Kitzke first alleges that his trial counsel was ineffective because he failed to file a motion to suppress evidence based on an insufficient search warrant affidavit.   He next alleges that use of a thermal heat-imaging device at his residence constituted a presumptively unreasonable search, and its use was one of the factors that directly led to the issuance of the search warrant.   Finally, Kitzke contends that his sentencing counsel was ineffective at sentencing for failure to

---

**2.**  In his appeal, Kitzke has not presented an independent state constitutional analysis of the issues.

**3.**  The charges were conspiracy to deliver marijuana, conspiracy to deliver psilocybin mushrooms, conspiracy to possess marijuana with intent to deliver, conspiracy to possess psilocybin mushrooms with intent to deliver, possession of marijuana with intent to deliver, possession of psilocybin mushrooms with intent to deliver, and possession of marijuana in a plant form exceeding three ounces.

review the record, failure to file a motion to withdraw guilty plea and a suppression motion, and failure to prepare for sentencing. He argues that the suppression motion would have kept out the incriminating evidence, and he would have been acquitted.

[¶ 8] Analysis of these claims must begin with the observation that an unconditional guilty plea waives all non-jurisdictional defenses, including claims based on the alleged deprivation of constitutional rights. *Smith v. State*, 871 P.2d 186, 188–89 (Wyo. 1994); *Davila v. State*, 831 P.2d 204, 205–06 (Wyo.1992). The only claims not waived by an unconditional guilty plea are those that address the jurisdiction of the court or the voluntariness of the plea. *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992). "Jurisdictional defenses involve the state's power to bring the defendant into court; non-jurisdictional defenses are those ' "objections and defenses which would not prevent a trial." ' " *Smith*, 871 P.2d at 188 (*quoting Davila*, 831 P.2d at 205–06). " 'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *Smith*, 871 P.2d at 188 (*quoting Davila*, 831 P.2d at 206).

[¶ 9] Examples of jurisdictional defects are unconstitutionality of the statute defining the crime, failure of the indictment or information to state an offense, and double jeopardy. *Davila*, 831 P.2d at 205. Non-jurisdictional defects include the use of inadmissible evidence, the use of unlawfully obtained statements, a claim that a grand jury was improperly convened and conducted, and a claim of violation of the right to speedy trial. *Id.* at 206. Kitzke's claim that counsel was ineffective in failing to file a motion to suppress is non-jurisdictional, as it does not implicate a matter directly relating to the entry of his guilty plea or the power of the state to bring him into court. *See, e.g., State v. Quick*, 177 Ariz. 314, 868 P.2d 327, 329 (1993). Nevertheless,

[w]hen a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir.1988).

*Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). In *Mehring v. State*, 860 P.2d 1101, 1112–13 (Wyo.1993), we said:

The examination of a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992) (*quoting Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). When a guilty plea is challenged based on ineffective assistance of counsel, the defendant, to establish prejudice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial. *Hill [v. Lockhart]*, 474 U.S. [52] at 59, 106 S.Ct. [366] at 370 [88 L.Ed.2d 203 (1985)]. The *Hill* standard was adopted by Wyoming in *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). A strong presumption is invoked that counsel rendered adequate and reasonable assistance. *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987). The burden is on the defendant to overcome this presumption. *Dickeson*, 843 P.2d at 609.

[¶ 10] Kitzke alleges that his trial counsel was ineffective for failing to attempt to suppress the evidence that the State obtained through a search warrant. The gist of his argument is that there was insufficient information in the affidavit that was used to obtain the search warrant from which a neutral magistrate could find probable cause to allow the search. The affidavit reads as follows:

1. Your affiant is a Deputy Sheriff with the Natrona County Sheriff's Office assigned as a Special Agent with the Division of Criminal Investigation, Central Drug Enforcement Team. Affiant has approximately three years of law enforcement experience. Affiant has received training from the Wyoming Law Enforcement

Academy, Wyoming Division of Criminal Investigation, and the United States Attorney's Office in the area of controlled substance violations. Your affiant has also received training from the Wyoming Division of Criminal Investigations in regards to indoor grow operations.

2. Your affiant knows from his training and experience and from information shared by other agents, that marijuana growers normally use indoor grow lights and exhaust fans, which use substantially more electricity than would be used in a normal house hold [sic].

3. On March 9, 1998, Investigator Corey Davison of the Natrona County Sheriff's Department, forwarded to your affiant a report concerning an indoor marijuana grow. Investigator Davison shared with your affiant that during the course of an aggravated assault investigation, the information of a marijuana grow was received. During questioning of juvenile suspects under their Miranda Rights, the suspects admitted the following. The suspects went to [address], Natrona County to steal marijuana from Kenneth Kitzke. The suspects told Investigator Davison that the pair went to the house and were confronted by Kitzke, who was then assaulted by the suspects. During questioning under Miranda the suspects told Investigator Davison that they were there to steal the marijuana which Kitzke was growing but were unable because someone inside the house had called 911. When asked how they knew of this grow, they told Investigator Davison that Kitzke's son had told them about his father[']s grow and process. The suspects further admitted under Miranda to Investigator Davison that the marijuana was grown in a trailer house which was located behind Kitzke's house to the west. The trailer was used for grow purposes and not inhabited. The suspects described a series of six locks on the door of the back trailer securing the door.

4. On March 9, 1998, Special Agents Bennett and Street went to [address], Natrona County, and confirmed the location of the trailers. Through the use of binoculars and photo equipment, the described trailer was found to the west of the main trailer. A series of locks or locking devices could be on the door to the trailer as described.

5. On March 9, 1998, your affiant checked FBI files and found Kitzke had prior convictions for manufacture of marijuana in Washington, Oregon, and Wyoming. The most recent conviction was on February 10, 1993 for delivery of marijuana. Kitzke was convicted and placed on 60 months probation.

6. Your affiant knows from his experience and from information shared by other agents that records showing the subscriber to the electricity and records showing electrical consumption of electricity along with records showing the items using the electricity, and usage history records of said address needs to be compared with comparable residences to show if there is [a] difference in the electricity usage.

7. On March 11, 1998 your affiant received power records from Pacific Power and Light, of Kitzke's property and like properties and structures located in the ... subdivision, Natrona County, Wyoming. Power usage for Kitzke's property is more than double that of like properties and structures located in the ... subdivision.

8. Your affiant was told by SA Bennett that on Wednesday, March 11, 1998, at approximately 11:00 pm, SA Bennett, being trained in the use and interpretation of thermal imaging equipment, with personally using the thermal imager 14 times in marijuana grow investigations resulting in 9 positive readings, resulting in grow operations that yielded between 6 and 400 marijuana plants.

9. Your affiant was told by SA Bennett that the thermal detection device is a passive, non-intrusive system which detects differences in the surface temperature of the structure being observed. This system does not send any beams or rays into an area, nor does it enter any structure. The system only detects differences in the surface temperatures of a structure. The use of this device in the early morning or late evening hours without solar loading, (sunshine), will highlight man-made heat

sources as a white color and cooler temperatures by a shade of gray. Similar devices have been used for other applications such as locating missing persons in forests, identifying ineffective building insulation, detecting hot overloaded power lines, and detecting fresh fires through smoke. On the aforementioned night SA Bennett aimed the thermal device at the building structures located at [address]. SA Bennett used the thermal device while staying on the ... roadway.

10. The resulting reading showed some higher than usual surface temperatures on the back trailer house but due to the distance from the roadway to the trailer house SA Bennett could not get a conclusive reading.

\* \* \* [4]

[¶ 11] We have twice recently, at considerable length, reiterated our standard for the review of search warrant affidavits, and we will not do so here again. *See Hixson v. State*, 2001 WY 99, ¶¶ 5–12, 33 P.3d 154, 156–59 (2001) and *Cordova v. State*, 2001 WY 96, ¶¶ 5–29, 33 P.3d 142, 146–53 (2001). Suffice it to say that, under the totality of the circumstances, giving due deference to the issuing judicial officer's determinations, and recognizing Kitzke's burden of proving a violation of his constitutional rights by a preponderance of the evidence, we conclude that the affidavit presented probable cause to issue the search warrant, with or without the thermal imaging information.

[¶ 12] The issuing judge learned from the affidavit of a trained and experienced law enforcement officer that juvenile suspects in a criminal case had, against their penal interests, admitted an attempt to steal marijuana from Kitzke. The juveniles had learned of the marijuana grow operation from a member of Kitzke's family. They identified the location, identified the individual buildings on the premises, and told of the series of locks on the trailer in which the grow operation was housed. Law enforcement officers then corroborated that information. In addition, Kitzke's criminal history revealed previous controlled substance convictions, including the illegal manufacture of marijuana. And

finally, power company records indicated an inordinate use of electricity on Kitzke's property, such being an indicator of a grow operation. Taken together, these facts constituted probable cause to believe that the crime was being committed on the identified premises. A motion to suppress would not have succeeded, so trial counsel was not ineffective in failing to file such a motion. *Burnett v. State*, 997 P.2d 1023, 1026 (Wyo.2000). On appeal, Kitzke has not overcome the deference afforded to the issuing judge's determinations nor has he overcome the presumption that the issuance of the search warrant was valid. *Lee v. State*, 2 P.3d 517, 522–23 (Wyo. 2000).

[¶ 13] In a supplemental brief, Kitzke raises the additional argument that the use of a thermal detection device constituted a presumptively unreasonable search of his premises, and that, since this was one of the factors that led to the issuance of the search warrant, the results of the search should have been suppressed. Kitzke's argument is based on *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). In *Kyllo*, the United States Supreme Court held that use of a thermal imaging device on a home constituted a search in violation of the resident's reasonable expectation of privacy. *Id.* at 34–40, 121 S.Ct. 2038. Because *Kyllo* was published after Kitzke was sentenced, Kitzke's argument on appeal is that his counsel was ineffective in not knowing of the case's existence and its potential impact.

[¶ 14] For several reasons, we decline to address the *Kyllo* issue. First, the results of the thermal imaging device in the present case were inconclusive and added nothing to the search warrant affidavit. Second, the facts set forth in the affidavit, discounting the thermal imaging information, were sufficient to establish probable cause. Third, the device was not used on Kitzke's residence. And fourth, no bad faith on the part of law enforcement is shown, given that *Kyllo* was published after the search warrant was ob-

---

4. Omitted are five paragraphs of "boilerplate" language.

tained.[5]

[¶ 15] Finally, Kitzke claims that his counsel at sentencing was unprepared. He contends his sentencing counsel should have filed a motion to withdraw his guilty plea and a motion to suppress evidence. We have already analyzed these contentions, based as they are on Kitzke's search warrant affidavit arguments, and we will not repeat that analysis here.[6] Kitzke also claims that his sentencing counsel did not sufficiently review the entire file before sentencing and did not obtain the most favorable sentence for him. Kitzke fails to identify what, if any, portion of the file his sentencing counsel did not review. He also fails to identify what more favorable sentence he might have gotten or was entitled to get but failed to receive due to any omission by his sentencing counsel at sentencing. For example, Kitzke argues that his sentencing counsel did not provide support for his contention that the marijuana he was raising was for his ill wife. The State's reply in its appellate brief to this contention aptly shows why it must fail:

> Appellant also complains that his counsel at sentencing did not support his contentions that the marijuana he was growing and distributing was solely for his ill wife. However, the record shows that Appellant's counsel gingerly addressed this issue, and expressed an understanding for Appellant's actions in aid of his ill wife. Appellant fails to identify what additional support from counsel was necessary following his own explanation to the court for his growing marijuana, and given the fact that such were [sic] also set out in the pre-sentence investigation report which the court reviewed....

Moreover, while Appellant acknowledges that counsel's efforts to support such explanations would not have provided a legal defense for growing marijuana with the intent to distribute it, he argues that the lack of support deprived him of some unidentified amount of mitigation of his sentence. Again, Appellant altogether fails to identify what mitigation could have arisen from counsel's support of his dubious claims. Based on the initial charging information, Appellant's pre-sentence investigation report, Appellant's unconditional and voluntary guilty plea, evidence at the sentencing hearing that Appellant's wife did not smoke any of the marijuana that Appellant grew, and the State's evidence related to Appellant's possession and delivery of drugs other than marijuana, Appellant's counsel at sentencing likely maintained a modicum of professional credibility by declining to more stridently argue that Appellant's involvement with marijuana was solely related to his wife's illness. Indeed, vigorously pressing such an absurd claim could have convinced the court that Appellant was in need of a more lengthy period of correctional confinement than the one actually imposed.

[¶ 16] Kitzke's similar complaints that his sentencing counsel did not sufficiently challenge the findings of the presentence investigation report and did not find or prepare witnesses to speak for him must also fail. Kitzke's sentencing counsel did present to the district court corrections that Kitzke wished to be made to the presentence investigation report. Beyond that, Kitzke neither identifies the witnesses he now claims were necessary nor what their testimony would

---

5. Before the United States Supreme Court held in *Kyllo* that the warrantless use of a thermal imaging device on a residence was an unreasonable search, several federal circuits had concluded that such was not a search at all. *See United States v. Kyllo*, 190 F.3d 1041, 1045–46 (9th Cir.1999), *cert. granted*, 530 U.S. 1305, 121 S.Ct. 29, 147 L.Ed.2d 1052, *rev'd*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *United States v. Ishmael*, 48 F.3d 850, 853 (5th Cir.), *cert. denied*, 516 U.S. 818, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995); *United States v. Myers*, 46 F.3d 668, 669 (7th Cir.), *cert. denied*, 516 U.S. 879, 116 S.Ct. 213, 133 L.Ed.2d 144 (1995); *United States v. Ford*, 34 F.3d 992, 995 (11th Cir.1994); and

*United States v. Pinson*, 24 F.3d 1056, 1058 (8th Cir.), *cert. denied*, 513 U.S. 1057, 115 S.Ct. 664, 130 L.Ed.2d 598 (1994). In addition, the Tenth Circuit Court of Appeals, in a case arising in Wyoming, had decided not to decide the issue. *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir.1996).

6. The thrust of Kitzke's argument is that he would have been allowed to withdraw his guilty plea because it was not voluntarily entered in that he did not know that the evidence would have been suppressed.

have been. There is nothing in the record to support Kitzke's allegation that his sentencing counsel was ineffective.

## CONCLUSION

[¶ 17] Kitzke has not met his burden of showing inadequate probable cause for issuance of the search warrant in this case, and he has, therefore, also not met his burden of proving that his trial counsel was ineffective for failing to file a motion to suppress the evidence obtained as a result of the execution of that search warrant. Likewise, Kitzke has failed to meet his burden of proving that his sentencing counsel was ineffective at sentencing.

[¶ 18] Affirmed.