# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 68

## APRIL TERM, A.D. 2023

## July 6, 2023

FRANK J. McHENRY,

Appellant
(Defendant),

v.

S-22-0199

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.  Argument by Ms. Jones.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    After spending over three years in jail awaiting trial on multiple charges, including first degree murder, Frank J. McHenry entered into a plea agreement with the State and pleaded no contest to voluntary manslaughter, attempted voluntary manslaughter, two counts of aggravated burglary, and four counts of interference with a peace officer.  Prior to sentencing, he moved to withdraw his pleas over concerns about violation of his right to a speedy trial and defense counsel's performance.  The district court denied his motion and sentenced him in accordance with the plea agreement.  Mr. McHenry asserts the district court abused its discretion by denying his motion to withdraw his pleas.  We affirm.

## ISSUE

[¶2]    Mr. McHenry raises a single issue on appeal:  Whether the district court abused its discretion when it denied his motion to withdraw his no contest pleas.

## FACTS

[¶3]    On May 11, 2018, Mr. McHenry broke into two homes in Laramie County and stole firearms, which he used to shoot two people, killing one and injuring the other.  Law enforcement arrested Mr. McHenry near the crime scene.  Although a witness described him as clothed at the time of the shootings, he was naked when officers took him into custody.  While being processed at the Laramie County Sheriff's Office, Mr. McHenry became physically aggressive and attacked several officers.  He was admitted to the hospital in Cheyenne later that day for agitated delirium.

### Proceedings Prior to No Contest Pleas

[¶4]    The State charged Mr. McHenry with first-degree murder (Wyo. Stat. Ann. § 6-2-101(a)-(b) (LexisNexis 2021)), attempted first-degree murder (Wyo. Stat. Ann. §§ 6-2-101(a)-(b) & 6-1-301(a) (LexisNexis 2021)), two counts of aggravated burglary (Wyo. Stat. Ann. § 6-3-301(c)(i) (LexisNexis 2021)), four counts of felony interference with a peace officer (Wyo. Stat. Ann. § 6-5-204(b) (LexisNexis 2021)), and one count of misdemeanor property destruction (Wyo. Stat. Ann. § 6-3-201(a), (b)(i) (LexisNexis 2021)).  On May 25, 2018, criminal proceedings against Mr. McHenry were suspended for examination of his fitness to proceed under Wyo. Stat. Ann. § 7-11-302 and § 7-11-303 (LexisNexis 2021).  A designated examiner found Mr. McHenry fit to proceed, and he was arraigned on September 24, 2018.  Mr. McHenry entered pleas of not guilty and not guilty by reason of mental illness or deficiency (NGMI).  Because Mr. McHenry pleaded NGMI, the district court ordered an evaluation under Wyo. Stat. Ann. § 7-11-304 (LexisNexis 2021) to determine his mental capacity at the time of the crimes.  Section 7-11-304(a) ("A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the

1

wrongfulness of his conduct or to conform his conduct to the requirements of law."); Section 7-11-304(d) ("In all cases where a plea of 'not guilty by reason of mental illness or deficiency' is made, the court shall order an examination of the defendant by a designated examiner.").

[¶5]    On October 9, 2018, Mr. McHenry filed his first demand for a speedy trial. Trial was originally set to commence on January 8, 2019, but, over the next several months, Mr. McHenry filed several successful motions to extend the NGMI evaluation deadline and continue the trial. He expressly stated in his motions that speedy trial was not a concern because the delays were due to the NGMI evaluation procedure and would, therefore, be excluded from the speedy trial calculation under Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 48 and be "solely attributable to the defense" in a constitutional speedy trial analysis. *See* W.R.Cr.P. 48(b)(3)(A) ("The following periods shall be excluded in computing the time for trial: . . . All proceedings related to the mental illness or deficiency of the defendant."); *Potter v. State,* 2007 WY 83, ¶ 37, 158 P.3d 656, 665 (Wyo. 2007) (attributing delay resulting from NGMI plea to the defense).

[¶6]    Mr. McHenry changed attorneys in September 2019. His newly retained counsel filed a motion to continue the trial which, at that time, was set for October 2019. At a hearing on September 27, 2019, issues arose regarding Mr. McHenry's NGMI pleas, the NGMI evaluation, and speedy trial. There was discussion indicating the defense may no longer be pursuing the NGMI pleas, but defense counsel represented that "until [the] NGMI plea is fully revoked or this [c]ourt makes a ruling on such, [the] speedy trial date is effectively paused." He stated, "My client's certainly prepared to, if this [c]ourt requires it, waive that speedy trial demand. I don't think that would be necessary at this point. I think it's really six months from whatever date we determine this NGMI plea goes away." The district court reset the trial to begin in January 2020, but Mr. McHenry requested additional continuances and the trial was postponed until April 2020. Although Mr. McHenry signed waivers of speedy trial in another docketed case, no written waiver was ever filed in this case.

[¶7]    The April 2020 trial date was postponed due to the COVID-19 pandemic. Defense counsel represented there were no speedy trial problems and Mr. McHenry would not be prejudiced by the delay. The district court held several status conferences in the spring, summer, and fall of 2020 to discuss setting the case for a jury trial under pandemic restrictions. At a September 2020 hearing, the district court and State expressed concerns about Mr. McHenry's right to a speedy trial, but defense counsel stated Mr. McHenry had waived his right. The district court noted no waiver had been filed in the case and ordered defense counsel to do so. It also ordered the parties to submit briefs addressing Mr. McHenry's right to a speedy trial. Defense counsel did not file the waiver, and there is nothing in the record indicating either party complied with the court's briefing order.

[¶8]    The case continued to be delayed in 2021 due to the pandemic.  On April 2, 2021, Mr. McHenry filed a second demand for a speedy trial.  At a scheduling conference on May 6, 2021, defense counsel said that, although Mr. McHenry "knowingly and voluntarily" waived his right to a speedy trial, he was refusing to sign a written waiver and had, instead, directed defense counsel to file the second demand for a speedy trial.  The district court set the jury trial to commence on September 7, 2021, and, again, ordered the parties to brief the speedy trial issue.  The State complied by filing a brief on May 28, 2021, which included a comprehensive review of the course of proceedings and analysis of Mr. McHenry's right to a speedy trial under W.R.Cr.P. 48 and the federal and state constitutions and concluded there was no violation.  Mr. McHenry never filed a brief specifically addressing the speedy trial issue.

[¶9]    The district court held a hearing on May 26, 2021 (three years after Mr. McHenry's arrest and two years and eight months after his arraignment), to address the status of Mr. McHenry's NGMI pleas.  No evaluation under § 7-11-304 had ever been filed, and defense counsel asserted the pleas had been verbally withdrawn at the September 27, 2019, hearing.  The district court ordered him to file, by the close of business the next day, a written notice that Mr. McHenry intended to withdraw the NGMI pleas and proceed only with the not guilty pleas.  Defense counsel did not comply with the court's order, and, after a show cause hearing on July 22, 2021, the court found him in contempt of court.  To purge himself of the contempt, he filed a "Notice of Position Regarding NGMI Plea."  He asserted no written withdrawal of the NGMI pleas was required, the pleas became "a nullity" upon the "cessation of proceedings related to NGMI" in September 2019, and Mr. McHenry "persisted in" his not guilty pleas entered at his September 24, 2018, arraignment.  He seemed to indicate the speedy trial clock resumed once the NGMI plea became a "nullity" in September 2019.

### No Contest Pleas

[¶10] Mr. McHenry and the State entered into a plea agreement, whereunder the first-degree murder and attempted first-degree murder charges were reduced to voluntary manslaughter (Wyo. Stat. Ann. § 6-2-105(a)(i) (LexisNexis 2021)) and attempted voluntary manslaughter (§§ 6-2-105(a)(i), 6-2-301(a)(i)) and the misdemeanor property destruction charge was dismissed.  He also agreed to plead guilty to the originally charged two counts of aggravated burglary and four counts of felony interference with a peace officer.  The recommended sentences in the plea agreement included a maximum of twenty years in prison for all counts, which was a significant downward departure from the potential sentences of death or life in prison without the possibility of parole for the original first-degree murder and attempted first-degree murder charges.  *See* § 6-2-101(b) (penalty for first-degree murder) and Wyo. Stat. Ann. § 6-1-304 (LexisNexis 2021) (penalty for attempted first-degree murder).

[¶11] Because the presiding district court judge was out of town, a different judge conducted the change of plea hearing on August 18, 2021. Defense counsel confirmed at the hearing the NGMI pleas had been withdrawn and stated the defense was "not pursuing . . . a motion to dismiss . . . nor any appeal issues related" to speedy trial. The court reviewed Mr. McHenry's rights in accordance with W.R.Cr.P. 11, including his rights to persist with his not guilty pleas and to be tried by a jury, and informed him that, by changing his pleas, he "would be waiving or giving up" his rights. *See* W.R.Cr.P. 11(b), (d)-(h) (setting out requirements which must be met for a court to accept a guilty or no contest plea). Mr. McHenry said he did not have any questions about his rights or the effects of changing his pleas and was satisfied with his counsel. However, later in the hearing, he questioned the court, "So being incarcerated for three-and-a-half years, and being arraigned in September of 2018 has nothing to do with the speedy trial?" The court informed him he would receive credit against his sentences for his presentence incarceration and then said, "As to speedy trial, it's a separate legal issue. Your attorney asserts that while everyone was obviously interested in those sorts of things, that he has not moved to dismiss, and you have agreed not to appeal on speedy trial grounds. You agree with that?" Mr. McHenry said he did. Although the plea agreement stated Mr. McHenry would plead guilty, the State and the court agreed at the change of plea hearing to allow him to enter no contest pleas, with the court accepting the probable cause affidavit filed with the criminal information as the factual basis for the crimes. The court accepted the pleas after finding Mr. McHenry entered them knowingly and voluntarily, with full understanding of his rights and the consequences of the pleas.

### *Proceedings After Change of Pleas*

[¶12] The district court judge who had presided over most of the proceedings but was not available for the change of plea hearing sua sponte held an "in camera" hearing on November 12, 2021, with only Mr. McHenry and his defense counsel present. Although the judge copied the State with the order setting the hearing, she "precluded" the State "from participating" and sealed the hearing transcript.[1] The judge began by telling Mr.

---

[1] The State filed a motion asking for reconsideration to "cure" ex parte communications, the closure of the courtroom to the public, the prohibition on the State's attendance at the hearing, and the sealing of the record. The State asserted the judge had violated Wyoming Code of Judicial Conduct Rule 2.9(A), which states:

> (A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending* or impending matter,* except as follows:
>
> (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters or issues on the merits, is permitted, provided:
>
> (a) the judge reasonably believes that no party will gain a

4

McHenry she "had many concerns about [defense counsel's] conduct," which she did not have the opportunity to express before Mr. McHenry changed his pleas. The judge informed Mr. McHenry she had reported defense counsel to the Wyoming State Bar for concerns about his "inattentiveness" to this case and another case involving Mr. McHenry, misfiling of documents, "oversights," and "inaccuracies." She offered to appoint the public defender's office to advise Mr. McHenry on "whether the circumstances [she had] described . . . would cause [him] to move to withdraw" his no contest pleas.

[¶13] Mr. McHenry acknowledged he had been concerned about "signing [away his] right to appeal in respect to speedy trial violations"; however, he recognized he "did waive those rights" by pleading no contest. He stated he was "still comfortable with the plea agreement," his sentence, and defense counsel's performance and he would not be withdrawing his pleas. The judge advised him to take some time to think about the situation and to write her a letter if he wanted her to appoint alternate counsel. She told him, "If you go back to the jail and sleep on it over the weekend and decide on Monday that things are looking a little bit differently to you than they are right now, I will not hold it against you if you tell me something different in the future."

[¶14] A few days later, Mr. McHenry sent a letter to the judge. Contrary to what the judge said at the hearing, her judicial assistant told Mr. McHenry the judge was not "authorized to receive ex parte communications of this nature" and forwarded the letter to defense counsel without the judge reading it. Later, Mr. McHenry requested his scheduled sentencing be continued to give him time to consult with the public defender's office and make "a full and cohesive decision regarding his rights and potential courses of action."[2] On January 19, 2022, he sent another letter to the court. He stated he was having trouble

> procedural, substantive, or tactical advantage as a result of the ex parte communication; and
>
> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

A "'[p]ending matter' is a matter that has commenced. A matter continues to be pending through any appellate process until final disposition." Wyo. Code of Jud. Conduct, *Terminology*. The district court denied the State's motion.

[2] During this time, the district attorney filed a "Verified Petition for Writ of Mandamus" with this Court, naming the district judge as the respondent. The district attorney sought a writ of mandamus ordering the district judge to "perform her statutory obligations and immediately produce to the [State] a copy of the November 12, 2021, hearing transcript; to comply with the requirements of Wyoming Code of Judicial Conduct, Rule 2.9 *Ex Parte* Communications; to cease and desist closure of the public's courtroom; and cease the prohibition of the State's knowledge of, presence at, and participation in any and all future proceedings" in the case against Mr. McHenry. We dismissed the petition after the district attorney failed to respond to our order to "show cause, in writing, why her petition for writ of mandamus should not be dismissed for the reason the district attorney does not have the authority to pursue this matter in this Court." However, the district court eventually unsealed the transcript of the November 12, 2021, hearing.

contacting his attorney and had sent him a letter on January 10, 2022, stating his "wish[es] of removing [his] plea, fighting for [his] rights and freedom."

[¶15] On February 9, 2022, Mr. McHenry moved to withdraw his no contest pleas. He stated in his motion that, after consulting with defense counsel and the public defender's office, he believed he had a fair and just reason to withdraw his pleas. He cited concerns about speedy trial and defense counsel's performance, as voiced by the judge at the November 12, 2021, hearing. *See* W.R.Cr.P. 32(d) ("If a motion for withdrawal of a plea of guilty or [no contest] is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.").

[¶16] The district court reassigned the case to the judge who had conducted the change of plea hearing. The court held a hearing on Mr. McHenry's motion to withdraw his no contest pleas on April 12, 2022. The district court asked Mr. McHenry if he wanted to continue to be represented by defense counsel, and he said he did. After analyzing the case using the factors set out in *Frame v. State,* 2001 WY 72, 29 P.3d 86 (Wyo. 2001), the district court denied Mr. McHenry's motion to withdraw his no contest pleas.

[¶17] On April 25, 2022, Mr. McHenry sent a pro se letter to the court asking for "removal" of his attorney and appointment of a new attorney. At the sentencing hearing two days later, Mr. McHenry decided to waive his right to counsel and represent himself, which the district court allowed. The court sentenced Mr. McHenry in accordance with the plea agreement, which gave him a maximum of 20 years in prison for all counts (voluntary manslaughter, attempted voluntary manslaughter, two counts of aggravated burglary, and four counts of felony interference with a peace officer). He was credited with the 1,448 days he served prior to sentencing. Mr. McHenry filed a timely notice of appeal.

## DISCUSSION

[¶18] Under W.R.Cr.P. 32(d), "[i]f a motion for withdrawal of a plea of guilty or [no contest] is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." "'The defendant has the burden of establishing a fair and just reason to withdraw a plea under W.R.Cr.P. 32(d).'" *Delgado v. State,* 2022 WY 61, ¶ 25, 509 P.3d 913, 922 (Wyo. 2022) (quoting *Wanberg v. State,* 2020 WY 75, ¶ 15, 466 P.3d 269, 273 (Wyo. 2020), and *Steffey v. State,* 2019 WY 101, ¶ 30, 449 P.3d 1100, 1107-08 (Wyo. 2019)).

[¶19] In reviewing a district court's denial of a Rule 32(d) motion to withdraw, we treat no contest pleas like guilty pleas. *Winsted v. State,* 2010 WY 139, ¶ 7, 241 P.3d 497, 499 (Wyo. 2010) (citing *Major v. State,* 2004 WY 4, ¶ 11, 83 P.3d 468, 472 (Wyo. 2004)). "'A defendant has no absolute right to withdraw a plea of guilty before sentence is imposed, and where the strictures of W.R.Cr.P. 11 have been met, and the defendant intelligently,

knowingly, and voluntarily entered into his plea of guilty, the district court's decision to deny such a motion is within its sound discretion.'" *Steffey,* ¶ 38 n.11, 449 P.3d at 1110 n.11 (quoting *Frame*, ¶ 7, 29 P.3d at 89) (emphasis and other citations omitted)). Thus, a district court's denial of a defendant's Rule 32(d) motion to withdraw his plea is reviewed for abuse of discretion. *Delgado,* ¶ 26, 509 P.3d at 923 (citing *Wanberg,* ¶ 14, 466 P.3d at 273). The heart of our inquiry is the reasonableness of the district court's decision. *Delgado,* ¶ 26, 509 P.3d at 923 (citing *Russell v. State,* 2013 WY 137, ¶ 9, 312 P.3d 76, 78 (Wyo. 2013), and *Jackson v. State,* 2012 WY 56, ¶ 6, 273 P.3d 1105, 1107 (Wyo. 2012)). "'A court abuses its discretion only when it could not reasonably decide as it did.'" *Wanberg,* ¶ 14, 466 P.3d at 273 (quoting *Steffey,* ¶ 18, 449 P.3d at 1105). "[W]e accept the district court's findings of fact unless they are clearly erroneous." *Delgado,* ¶ 26, 509 P.3d at 923 (citing *Russell,* ¶ 9, 312 P.3d at 78, and *Dobbins v. State,* 2012 WY 110, ¶ 30, 298 P.3d 807, 815 (Wyo. 2012)).

[¶20] In general, "'[a] fair and just reason [to withdraw a guilty plea] includes inadequate plea colloquies, newly discovered evidence, intervening circumstances, or other reasons that did not exist when the defendant entered his plea.'" *Pettus v. State,* 2022 WY 126, ¶ 19, 518 P.3d 267, 274 (Wyo. 2022) (quoting *Winsted,* ¶ 16, 241 P.3d at 501) (other citation omitted). However, a "'change of mind or belated misgivings about entering a plea do not constitute a fair and just reason for allowing a plea withdrawal.'" *Id.* (quoting *Russell,* ¶ 24, 312 P.3d at 83) (other citation omitted).

[¶21] Courts use seven nonexclusive factors from *Frame* to analyze whether a defendant has established a fair and just reason to withdraw his plea:

> "(1) [w]hether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources."

*Delgado,* ¶ 27, 509 P.3d at 923 (quoting *Wanberg,* ¶ 16, 466 P.3d at 273, and *Frame,* ¶ 7, 29 P.3d at 89) (other citations omitted). "'No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal.'" *Russell,* ¶ 20, 312 P.3d at 82 (quoting *Dobbins,* ¶ 53, 298 P.3d at 822, and *Major,* ¶ 14, 83 P.3d at 473) (emphasis omitted).

[¶22] After considering the *Frame* factors, the district court decided Mr. McHenry had not established a fair and just reason for withdrawal of his no contest pleas and denied his motion to withdraw his pleas. The district court found generally in Mr. McHenry's favor on the second, fourth, and seventh factors, i.e., it concluded allowing withdrawal of the

pleas would not prejudice the State, inconvenience the court, or waste judicial resources. Although the State asserts some of those conclusions were in error, we need not address them because we agree with the district court that, even with the favorable rulings on those factors, Mr. McHenry did not establish a fair and just reason to withdraw his no contest pleas. We turn, then, to Mr. McHenry's challenges to the district court's conclusions on the other *Frame* factors.

### *Factor 1 – Assertion of Innocence*

[¶23] The district court found the first *Frame* factor weighed against allowing Mr. McHenry to withdraw his no contest pleas because he did not properly assert his innocence. Mr. McHenry concedes he did not claim in his motion to withdraw his pleas that he was factually innocent of committing the crimes but maintains he "adamantly" asserted his right to a speedy trial had been violated, which could show his legal innocence. We recognized in *Delgado,* ¶ 30, 509 P.3d at 923-24, that a defendant may satisfy the first *Frame* factor by asserting his legal innocence. *See also, United States v. Hamilton,* 510 F.3d 1209, 1214 (10th Cir. 2007) (to establish a fair and just reason to withdraw a guilty plea under Federal Rule of Criminal Procedure (Fed.R.Crim.P.) 32(d), "a defendant may satisfy the assertion-of-innocence factor by asserting [his] legal innocence" (citing Fed.R.Crim.P. 32 advisory committee's note to 1983 amendments, and *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007))).

[¶24] The Sixth Amendment to the United States Constitution, article 1, § 10 of the Wyoming Constitution, and W.R.Cr.P. 48 guarantee a criminal defendant the right to a speedy trial. *See Vance v. State,* 2012 WY 83, ¶ 8, 278 P.3d 254, 256 (Wyo. 2012) (Sixth Amendment); *Berry v. State,* 2004 WY 81, ¶ 17, 93 P.3d 222, 227 (Wyo. 2004) ("We review speedy trial claims to ensure that the mandates of W.R.Cr.P. 48 and constitutional guarantees have been met."). When a defendant's speedy trial right has been violated, the charges against him must be dismissed. *Vance,* ¶ 8, 278 P.3d at 256 (citing *Warner v. State,* 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo. 2001), and *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972)). Thus, proof of a violation of speedy trial could establish the defendant's legal innocence.

[¶25] However, a "speedy trial claim is non-jurisdictional and [is] waived by [an] unconditional no contest plea." *Baker v. State,* 2022 WY 69, ¶ 3, 510 P.3d 1080, 1080 (Wyo. 2022) (citing *Kitzke v. State*, 2002 WY 147, ¶¶ 8-9, 55 P.3d 696, 699 (Wyo. 2002) ("Analysis of these claims must begin with the observation that an unconditional guilty plea waives all non-jurisdictional defenses, including claims based on the alleged deprivation of constitutional rights. The only claims not waived by an unconditional guilty plea are those that address the jurisdiction of the court or the voluntariness of the plea. . . . Non-jurisdictional defects include . . . a claim of violation of the right to speedy trial." (citations omitted))). *See also, Cohee v. State,* 2005 WY 50, ¶ 13, 110 P.3d 267, 272 (Wyo. 2005) (a guilty plea waives non-jurisdictional constitutional

challenges to pretrial proceedings, including speedy trial violations). Consequently, a defendant who pleads guilty or no contest cannot seek dismissal of the charges against him for a speedy trial violation unless he successfully withdraws his plea.

[¶26] When considering a motion to withdraw a plea, the "'mere assertion of a legal defense is insufficient'" to satisfy the first *Frame* factor. *Russell,* ¶ 22, 312 P.3d at 82 (quoting *United States v. Byrum,* 567 F.3d 1255, 1264-65 (10th Cir. 2009)). "'[T]he defendant must present a credible claim of legal innocence.'" *Id.* (other citation omitted). In *Sunseri v. State,* 495 P.3d 127, 132 (Nev. 2021), the Nevada Supreme Court decided the defendant presented a fair and just reason to withdraw his guilty plea prior to sentencing. He offered a credible legal defense by making "a strong argument that his right to a speedy trial had been violated and the charges against him should be dismissed." He also presented evidence showing "his counsel never discussed with him whether his speedy-trial right had been violated before he agreed" to plead guilty. *Id.* at 133. *C.f., Hamilton,* 510 F.3d at 1214-15 (in seeking to withdraw his guilty plea for possession with intent to distribute crack cocaine, the defendant did not properly assert a credible claim he was legally innocent because he failed to present facts demonstrating that law enforcement's "seizure of the drugs violated the Fourth Amendment").

[¶27] Although Mr. McHenry was aware of the speedy trial issue in his case, he did nothing more than make the bare assertion his right to a speedy trial had been violated. In his motion to withdraw his pleas, he stated that he had "re-analyzed certain issues related to his right to [a] speedy trial and believe[d] his concerns warrant[ed] further analysis and potentially [m]otions regarding the same." At the hearing on his motion to withdraw, defense counsel simply stated Mr. McHenry had "grave concern" about his "speedy trial rights." Neither his written motion to withdraw his pleas nor his argument at the hearing included any discussion of the facts and course of proceedings of his case under W.R.Cr.P. 48 or the speedy trial provisions of the federal and state constitutions. *See, e.g., Cotney v. State,* 2022 WY 17, ¶¶ 18-19, 503 P.3d 58, 65-66 (Wyo. 2022) (demonstrating proper speedy trial analyses). To this day, he has not presented a credible speedy trial claim, and his brief on appeal is devoid of any such analysis. The record contains no credible claim Mr. McHenry was legally innocent of the charges because his speedy trial rights had been violated. Consequently, the district court correctly found the first *Frame* factor weighed against allowing Mr. McHenry to withdraw his no contest pleas.

### *Factor 3 – Delay in Filing Motion to Withdraw Pleas*

[¶28] The district court ruled the third *Frame* factor weighed against allowing Mr. McHenry to withdraw his pleas because he waited until February 9, 2022, to file his motion to withdraw, which was nearly six months after he entered his pleas on August 18, 2021. Mr. McHenry asserts the district court ignored the effect of the November 12, 2021, ex parte hearing where the judge expressed concerns about Mr. McHenry's pleas and defense counsel's performance in the case. He claims to have followed her advice to take some

time to think about having another attorney advise him and consider options regarding how to proceed in the case. Mr. McHenry directs us to the January 19, 2022, letter he sent to the court stating he had been having trouble contacting his attorney and had sent him a letter on January 10, 2022, stating his "wish[es] of removing [his] plea, fighting for [his] rights and freedom."

[¶29] Mr. McHenry's vague arguments about his right to a speedy trial and dissatisfaction with his attorney do not explain his delay in filing the motion to withdraw. He provides no justification for the delay from the August 18, 2021, change of plea hearing to the November 12, 2021, hearing or how the information he obtained from the judge at that hearing substantively changed his position on the speedy trial issue. He also does not explain why it took another three months after that hearing to file the motion to withdraw. Even if we accept that he expressed his desire to withdraw his plea in his January 2022 letter to the judge, there is no explanation for his failure to take any action to withdraw his pleas in the preceding two months when he was aware of the judge's concerns and had the opportunity to confer with alternate counsel.

[¶30] *Delgado* is an example of a case where the defendant provided a valid explanation for his delay in filing a motion to withdraw his plea. *Delgado,* ¶ 39, 509 P.3d at 925-26. After Mr. Delgado entered a no contest plea to felony possession of a deadly weapon with unlawful intent, he entered inpatient substance abuse and mental health treatment, where he was diagnosed with bipolar I and severe alcohol use disorders. *Id.,* ¶¶ 1, 9, 509 P.3d at 917-18. He filed a motion to withdraw his no contest plea a short time after being released from treatment, claiming the information he obtained there supported allowing him to withdraw his plea and proceed with a NGMI plea. *Id.,* ¶ 39, 509 P.3d at 925-26.

[¶31] Mr. McHenry's situation is nothing like Mr. Delgado's. Mr. Delgado discovered he was suffering from mental health disorders after he pleaded no contest; Mr. McHenry did not learn any new facts regarding the underlying case at the November 12, 2021, hearing. The district judge's concerns about his attorney's performance and consequential report to the Wyoming State Bar were based on matters Mr. McHenry was intimately aware of when he entered his no contest pleas, having attended the same hearings as the judge and counsel. The State and the district court raised the speedy trial issue numerous times prior to the change of plea hearing. In fact, Mr. McHenry had the benefit of the State's full briefing of the speedy trial issue in May 2021, but it did not spur him to take any action to protect his right to a speedy trial. To the contrary, he expressly waived that right when he pleaded no contest in August 2021, and he confirmed his understanding of the waiver at the November 12, 2021, hearing. Mr. McHenry did not communicate any concern about his counsel to the court until January 2022, and he did not request a change of counsel until right before sentencing, when he chose to represent himself. There was simply no "newly discovered evidence, intervening circumstances, or other reasons that did not exist when [Mr. McHenry] entered his plea" to justify his six-month delay in filing the motion to withdraw his no contest pleas. *Pettus,* ¶ 19, 518 P.3d at 274 (quotation marks and citation

10

omitted). The district court correctly determined the third *Frame* factor weighed against allowing him to withdraw his pleas.

### Factor 5 – Close Assistance of Counsel

[¶32] With respect to the fifth factor, the district court found "[t]here is no doubt [Mr. McHenry] has had the close assistance of counsel." It noted that "[e]ven the issues raised at the confidential [ex parte] hearing" on November 12, 2021, and his consultation with the public defender's office did not "dissuade" his allegiance to his attorney. Mr. McHenry "reaffirmed his confidence in and desire to be represented by [defense] counsel" many times, including at the April 12, 2022, hearing on his motion to withdraw his pleas. The district court continued, "The trial preparation, and the seemingly beneficial [plea] agreement reached for greatly reduced charges also weigh in favor of the conclusion that he has had more than sufficient opportunity to benefit from representation."

[¶33] Mr. McHenry argues that whether he personally liked or was satisfied with his attorney is irrelevant. He claims the question, instead, is whether his attorney properly assisted and attended to the case and points out the judge at the November 12, 2021, hearing had "severe reservations" in that regard. He identifies numerous times where his attorney failed to comply with the court's orders to file documents or brief legal issues pertaining to speedy trial and the NGMI pleas as evidence he did not receive the close assistance of counsel.

[¶34] "'[T]he close assistance of counsel factor under *Frame* requires counsel's assistance to be adequate and available.'" *Delgado,* ¶ 40, 509 P.3d at 926 (quoting *Steffey,* ¶ 35, 449 P.3d at 1109, and citing *Doles v. State,* 2002 WY 146, ¶ 22, 55 P.3d 29, 33 (Wyo. 2002)). The focus of the inquiry is whether counsel provided adequate assistance to ensure the defendant made an "informed decision when he entered his plea." *Steffey,* ¶ 37, 449 P.3d at 1109.

[¶35] The record shows Mr. McHenry's right to a speedy trial was at the forefront of everyone's mind throughout the proceedings. Various defense filings described discussions between defense counsel and Mr. McHenry about his right to a speedy trial, and the attorneys and the district court conferred about the issue in Mr. McHenry's presence. Approximately three months before the change of plea hearing, the State filed a comprehensive brief setting forth its position that Mr. McHenry's speedy trial right had not been violated. Defense counsel represented at the July 2021 contempt hearing that, after reviewing the state's speedy trial brief, he had "work[ed] with" Mr. McHenry "regarding his understanding of speedy trial" and "consult[ed] with a law professor at UCLA regarding the speedy trial issues. . . ." Mr. McHenry entered into the plea agreement within a few weeks of that hearing. At the change of plea hearing, the district court, defense counsel, and Mr. McHenry discussed waiver of his speedy trial claim as one of the consequences of his decision to plead no contest.

11

[¶36] While we acknowledge, as did the district court, that defense counsel did not comply with the court's orders to file various documents addressing the speedy trial and NGMI issues, the record contains no information whatsoever on how those failures affected counsel's advice to Mr. McHenry regarding entry of his no contest pleas. Mr. McHenry did not testify at the hearing on the motion to withdraw or provide other evidence regarding defense counsel's assistance in helping him decide whether to enter into the plea agreement which resulted in his no contest pleas. He presented no evidence showing deficiencies in defense counsel's explanation of the speedy trial issue or how defense counsel's advice improperly influenced his decision to accept the terms of the plea agreement and waive his speedy trial claim. The lack of such evidence distinguishes this case from *Steffey*, ¶¶ 11-13, 449 P.3d at 1104, where the defendant testified about the difficulty he had communicating with counsel concerning matters integral to his decision to change his plea for driving while under the influence of alcohol from not guilty to no contest. During the plea colloquy, Mr. Steffey repeatedly indicated he did not understand the plea agreement or his plea, and the evidence showed defense counsel did not adequately assist him in gaining that understanding. *Id.,* ¶¶ 23-29, 449 P.3d at 1106-07.

[¶37] Mr. McHenry's motion to withdraw his no contest pleas was based upon the concerns expressed by the judge at the November 12, 2021, ex parte hearing, which led him to reconsider his pleas in light of the speedy trial issue. However, Mr. McHenry provided no explanation about how a lack of adequate or available assistance from defense counsel affected his decision to enter into the plea agreement and plead no contest to the reduced charges. Mr. McHenry failed to establish he lacked the close assistance of counsel in deciding to plead no contest. The district court correctly concluded the fifth *Frame* factor weighed against allowing him to withdraw his pleas.

### Factor 6 – Knowing and Voluntary Plea

[¶38] A no contest "plea must be entered knowingly and voluntarily." *Pettus,* ¶ 30, 518 P.3d at 276 (citing *Delgado*, ¶ 42, 509 P.3d at 926, *Steffey*, ¶ 19, 449 P.3d at 1105, and *Dobbins*, ¶ 62, 298 P.3d at 824). "Whether or not a plea was knowing and voluntary is determined by an analysis within the context of W.R.Cr.P. 11." *Dobbins,* ¶ 62, 298 P.3d at 824. To ensure a defendant knowingly enters a plea, the court must properly advise him and confirm "he understands the 'nature of the plea, the penalties, including the potential maximum sentence associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accepts the plea.'" *Delgado,* ¶ 42, 509 P.3d at 926 (quoting *Major*, ¶ 23, 83 P.3d at 479, and citing W.R.Cr.P. 11). A plea is voluntary when it is

> "'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and is not] induced

12

by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"

*Dobbins,* ¶ 62, 298 P.3d at 824 (quoting *Major,* ¶ 11, 83 P.3d at 472, and *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)) (other citations omitted). "'We look to the totality of the circumstances to determine whether a plea was knowing and voluntary.'" *Pettus,* ¶ 30, 518 P.3d at 276 (quoting *Steffey*, ¶ 19, 449 P.3d at 1105) (other citation omitted).

[¶39] In deciding whether Mr. McHenry should be allowed to withdraw his pleas, the district court reviewed the change of plea proceedings to confirm it had complied with W.R.Cr.P. 11 and to "substantiate the knowing and voluntary nature of the pleas in this case." It described the change of plea hearing as follows:

> After discussion, including with [Mr. McHenry] directly about several matters including operation of the no contest plea[s], his speedy trial concerns, and other matters[,] it is clear [Mr. McHenry] understood his rights, the consequences he faced, . . . the effect of his pleas[,] and the operation of the plea agreement. Further, less usual matters were raised evidencing [Mr. McHenry's] understanding, including the postponement of entry of an order for a pre-sentence investigation, a minor issue about the State[']s amendment of the Information and his agreement (at the parties['] request) to enter his pleas before a judge not currently assigned to the case."

[¶40] Mr. McHenry argues that, while the district court followed Rule 11 at the change of plea hearing, his pleas were not knowing and voluntary because he was not aware of "all of the relevant information," specifically, he did not know the judge had reported defense counsel to the Wyoming State Bar. He maintains the November 2021 hearing shows that particular district judge believed he "did not know all of the facts and circumstances surrounding his case at the moment he entered his [no contest] plea[s]," and she wanted to make him aware he had "options regarding withdrawal" of his pleas. Again, his vague suggestion that the judge believed his right to a speedy trial had been violated or he had not received proper assistance from defense counsel is not supported by any analysis of the underlying speedy trial issue. He also fails to explain how that analysis changed between the time he entered his pleas and when he filed the motion to withdraw. Mr. McHenry does not argue that he did not understand the nature of his pleas or the consequences of entering them. Nor does he claim he was improperly induced to enter into the plea agreement by threats, promises, or misrepresentations. He has entirely failed to establish

13

the district court erred when it decided he entered his pleas knowingly and voluntarily under the sixth *Frame* factor.

[¶41]   Mr. McHenry did not show the district court's plea colloquy was inadequate, identify any relevant newly discovered evidence or intervening circumstances, or provide other reasons for withdrawal of his pleas that did not exist when he entered them.  *Pettus*, ¶ 19, 518 P.3d at 274.  The district court accurately found Mr. McHenry's "only suggestion . . . of specific additional work to be done was a vague reference to speedy trial . . . ., [but] speedy trial was addressed at the plea proceeding where [Mr. McHenry] . . . acknowledged his concern about the issue and understood he was giving that up with his plea[s], including any right to appeal on that ground."  Even accepting that allowing Mr. McHenry to withdraw his no contest pleas would not prejudice the State, inconvenience the court, or waste judicial resources, the *Frame* factors overall weigh against granting his motion.  He did not adequately assert his innocence, delayed in filing the motion to withdraw, received the close assistance of counsel when he pleaded no contest under a favorable plea agreement, and entered his no contest pleas knowingly and voluntarily.  The district court did not abuse its discretion when it balanced the *Frame* factors and concluded Mr. McHenry failed to establish a fair and just reason under W.R.Cr.P. 32(d) to withdraw his no contest pleas.

## CONCLUSION

[¶42]   The district court did not abuse its discretion by denying Mr. McHenry's motion to withdraw his no contest pleas because he failed to establish a fair and just reason for withdrawal.  His "belated misgivings" about his pleas did not justify allowing him to withdraw them.  *Pettus*, ¶ 19, 518 P.3d at 274 (other citations and quotation marks omitted).

[¶43]   The district court's decision is affirmed.